**Affirmed and Opinion Filed June 5, 2014**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-11-01730-CV

### CORNERSTONE HEALTHCARE GROUP HOLDING, INC, Appellant
### V.
### RELIANT SPLITTER, L.P., NAUTIC PARTNERS VI, L.P., AND KENNEDY PLAZA PARTNERS VI, L.P., Appellees

### On Appeal from the 68th Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. 11-04339

## MEMORANDUM OPINION

Before Justices Bridges, Lang, and Lewis
Opinion by Justice Bridges

Cornerstone Healthcare Group Holding, Inc. appeals the trial court's orders granting the special appearances of Reliant Splitter, L.P., Nautic Partners VI, L.P., and Kennedy Plaza Partners VI, L.P.. In three issues, Cornerstone argues appellees purposely availed themselves of Texas jurisdiction, there is a substantial connection between appellees' contacts with Texas and the operative facts of the litigation, and exercising jurisdiction over appellees would not offend traditional notions of fair play and substantial justice. We affirm the trial court's orders.

Cornerstone is a "provider of post acute care hospital services." Since 2007, Cornerstone was interested in growth opportunities, including the acquisition of inpatient and outpatient rehabilitation facilities. Cornerstone's executive management team was responsible for seeking

and evaluating prospective business relationships with inpatient rehabilitation hospitals. In late March 2011, several Cornerstone executives resigned in succession.

On March 23, 2011, New Reliant, a Delaware limited liability company with its principal place of business in Texas, acquired substantially all of the assets of "Old Reliant," an operator of inpatient rehabilitation hospitals in Texas. In April 2011, Cornerstone filed suit against New Reliant and other defendants alleging three of Cornerstone's executives had usurped a corporate opportunity from Cornerstone. Specifically, Cornerstone alleged the executives had failed to inform Cornerstone of a potential opportunity to acquire Old Reliant and worked with Nautic Partners, LLC[1], a Rhode Island private equity firm, in acquiring Old Reliant. Cornerstone subsequently amended its petition to include claims against appellees.

Appellees filed a special appearance asserting the trial court lacked jurisdiction over them because they are partnerships formed and existing under Delaware law with their principal place of business in Rhode Island. Appellees further argued, among other things, they do not continuously and systematically engage in business in Texas; have not appointed a registered agent for service of process in Texas; have not obtained a certificate to do business in Texas; and have no offices, real or personal property, address, telephone number, or bank account in Texas.

Appellees stated they are not direct owners of New Reliant. Instead, appellees entered into a limited liability company agreement with Reliant Holding Company, L.L.C., a Delaware limited liability company. Reliant Holding Company owns one hundred percent of Reliant Pledgor, L.L.C., a Delaware limited liability company. Reliant Pledgor owns one hundred percent of Reliant Opco Holding Corporation, a Delaware corporation. Reliant Pledgor owns 99.9% of New Reliant, and Reliant Opco owns 0.01%. Thus, appellees argued, they are Delaware partnerships with their principal place of business in Rhode Island, and their

---

[1] The record indicates Nautic Partners filed a general appearance in this case.

investment in New Reliant is "an indirect, passive investment via subsidiaries of Reliant Holding Company, a limited liability company formed under the laws of Delaware." The trial court subsequently entered orders granting appellees' special appearances. This appeal followed.

In its first issue, Cornerstone argues appellees purposely availed themselves of Texas jurisdiction. In its second issue, Cornerstone argues there is a substantial connection between appellees' contacts with Texas and the operative facts of the litigation. And in its third issue, Cornerstone argues exercising jurisdiction over appellees would not offend traditional notions of fair play and substantial justice.

The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provision of the Texas long-arm statute. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 793 (Tex. 2002). A nonresident defendant challenging personal jurisdiction through a special appearance carries the burden of negating all bases of personal jurisdiction. *Id.* Whether a court has personal jurisdiction over a defendant is a question of law. *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 805-806 (Tex.2002) (citing *BMC Software*, 83 S.W.3d at 794). In resolving this question of law, a trial court must frequently resolve questions of fact. *Coleman*, 83 S.W.3d at 806 (citing *BMC Software*, 83 S.W.3d at 794). Appellate courts review the trial court's factual findings for legal sufficiency and review the trial court's legal conclusions de novo. *BMC Software*, 83 S.W.3d at 794. Where the record contains no findings of fact and conclusions of law, we must imply all findings of fact necessary to support the trial court's findings that are supported by the evidence. *Id.* at 795.

The Texas long-arm statute permits Texas courts to exercise jurisdiction over a nonresident defendant that does business in Texas. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 17.041 -.045 (West 2013). The long-arm statute defines "doing business" as: (1) contracting by

mail or otherwise with a Texas resident with performance either in whole or in part in Texas; (2) commission of a tort in whole or in part in Texas; (3) recruitment of Texas residents directly or through an intermediary located in Texas; or (4) performance of any other act that may constitute doing business. *Id.* The broad language of the long-arm statute permits Texas courts to exercise jurisdiction "as far as the federal constitutional requirements of due process will permit." *BMC Software*, 83 S.W.3d at 795.

Personal jurisdiction over nonresident defendants meets the due process requirements of the Constitution when two conditions are met: (1) the defendant has established minimum contacts with the forum state; and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Spir Star AG v. Kimich*, 310 S.W.3d 868, 872 (Tex. 2010); *BMC Software*, 83 S.W.3d at 795 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Personal jurisdiction exists if the nonresident defendant's minimum contacts give rise to either general or specific jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413-14 (1984); *BMC Software*, 83 S.W.3d at 795-96; *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990). Specific jurisdiction is established if the nonresident defendant's alleged liability arises from or is related to activity conducted within the forum. *BMC Software*, 83 S.W.3d at 796. The minimum contacts analysis for specific jurisdiction focuses on the relationship among the defendant, the forum, and the litigation. *Spir Star*, 310 S.W.3d at 873; *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 790 (Tex.2005).

The "touchstone" of jurisdictional due process analysis is "purposeful availment." *Michiana*, 168 S.W.3d at 784 (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "[I]t is essential in each case that there be some act by which the defendant 'purposefully avails' itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Michiana*, 168 S.W.3d at 784 (quoting *Hanson*, 357 U.S. at 253). The

Texas Supreme Court has addressed the proper application of the concept of "purposeful availment" outlining three important aspects to be considered. First, it is only the defendant's contacts with the forum that count: purposeful availment "ensures that a defendant will not be haled into a jurisdiction solely as a result of ... the 'unilateral activity of another party or a third person.'" *Michiana*, 168 S.W.3d at 785 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Second, the acts relied upon must be "purposeful" rather than "random, isolated or fortuitous." *Michiana*, 168 S.W.3d at 785 (quoting *Keeton v. Hustler Magazine Inc.*, 465 U.S. 770, 774 (1984)). Third, a defendant must seek some benefit, advantage or profit by "availing" itself of the jurisdiction. By invoking the benefit and protections of a forum's laws, a nonresident consents to suit there. *Michiana*, 168 S.W.3d at 785 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Finally, in addition to minimum contacts, the exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice. *Spir Star*, 310 S.W.3d at 872; *BMC Software*, 83 S.W.3d at 795. The following factors are considered in making that determination: (1) the burden on the nonresident defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering substantive social policies. *World-Wide Volkswagen,* 444 U.S. at 292; *Guardian Royal Exchange Assur., Ltd. v. English China Clays*, 815 S.W.2d 223, 231 (Tex. 1991).

In general, a corporation is a separate legal entity that shields its owners and shareholders from the jurisdiction of a foreign jurisdiction, even if the corporation itself is within the court's jurisdiction. *Cappuccitti v. Gulf. Indus. Prods., Inc.*, 222 S.W.3d 468, 481 (Tex. App.—Houston [1st Dist.] 2007, no pet.). A court may, however, under appropriate circumstances, pierce the

corporate veil and bring shareholders or others within its jurisdiction as well. *Id.* (citing *BMC Software*, 83 S.W.3d at 798). One basis for piercing the corporate veil is the alter ego doctrine, which applies when there is such unity between a corporation and an individual that the separateness of the corporation has ceased and asserting jurisdiction over only the corporation would result in an injustice. *Id.*

The alter ego doctrine has also been applied in the context of a parent corporation and its subsidiary. *Id.* (citing *BMC Software*, 83 S.W.3d at 799). Texas courts may exercise personal jurisdiction over a nonresident parent corporation if the parent's relationship with its subsidiary that does business in Texas is one that would allow the court to impute the subsidiary's "doing business" to the parent. *Id.* Because Texas law presumes that two separate corporations are distinct entities and that a corporation is an entity separate from its officers and owners, the party seeking to ascribe one corporation's actions to another corporation or individual for jurisdictional purposes by piercing the corporate veil must prove the alter ego relationship. *Id.* (citing *BMC Software*, 83 S.W.3d at 798). To join the parent company and its subsidiary for jurisdictional purposes, the plaintiff must prove that the parent controls the internal business operations and affairs of the subsidiary. *Id.* (citing *BMC Software*, 83 S.W.3d at 799). The degree of control exercised by the parent must be greater than that normally associated with common ownership and directorship. *Id.* (citing *BMC Software*, 83 S.W.3d at 799). Thus, the plaintiff must present evidence showing that the two entities are not separate and the corporate veil, therefore, should be pierced to prevent fraud or injustice. *Id.* (citing *BMC Software*, 83 S.W.3d at 799).

Cornerstone argues that, in *Schlobohm v. Schapiro*, the Texas Supreme Court held "that a nonresident who funds a Texas company, controls its board, and is actively involved in its affairs has established minimum contacts with the state." *See Schlobohm*, 784 S.W.2d at 359. Cornerstone argues appellees have sufficient minimum contacts to require them to appear in a

Texas Court because appellees entered into a limited liability company agreement with Reliant Holding, which owns one hundred percent of Reliant Pledgor, which owns one hundred percent of Reliant Opco and Reliant Pledgor and Reliant Opco own 99.9% and 0.01%, respectively, of New Reliant, which purchased the hospitals at issue. Cornerstone argues further that appellees "paid for the hospitals at issue here, structured a chain of wholly owned subsidiaries to hold them, controlled the boards of each, and shortly after the purchase fired the executives who ran them."[2] In making these arguments, Cornerstone emphasizes that appellees paid 97% of the money to buy the hospitals and "held 100% of the stock of every entity" involved in the purchase of the hospitals. Cornerstone essentially argues the existence of the subsidiaries should be ignored, and appellees should be required to appear in a Texas court because they "control the funding and the board of New Reliant" and "play a strategic and advisory role" to New Reliant. We disagree.

In *Schlobohm*, a Pennsylvania resident, Rolf Schapiro, invested $10,000 in a corporation named Hangers, Inc. formed by Schapiro's son, a Dallas resident, to establish a dry cleaning business in Dallas. *Schlobohm*, 784 S.W.2d at 356. Schapiro received stock in Hangers and became its sole director. Although Schapiro did not participate in the incorporation, he conducted Hangers' first meeting in Dallas, and his attorney in Pittsburgh kept the corporate records. Hangers leased space for some of its outlets, and Schapiro guaranteed some of the leases. Hangers leased a building from Schlobohm in late 1984, but Schapiro did not participate in the negotiations and did not guarantee the lease. *Id.* Schapiro loaned Hangers $30,000 of his personal funds to buy equipment to expand the business. *Id.* He later visited Dallas and obtained financing for the rest of the plant, signing a promissory note in his individual capacity for $136,702.10. *Id.* Schapiro owned the equipment and leased it to Hangers. *Id.* Schapiro

---

[2] Plaintiff cites nothing in the record to show appellees acted directly in connection with the hiring and firing of any "executives."

"frequently provided funds during startup, expansion, and throughout Hangers' decline." *Id.* Schapiro "continually" covered Hangers' payroll and other expenses, and these sums, characterized as loans, totaled an estimated $474,000. *Id.* Over the course of his dealings with Hangers, Schapiro demanded that all shares in the corporation be transferred to him, sent his personal accountant to Dallas twice, and came to Dallas himself to investigate Hangers. *Id.* Schapiro ultimately discontinued his relationship with Hangers, and Hangers stopped paying rent on the building it leased from Schlobohm. *Id.*

Schlobohm sued Schapiro, his son, and Hangers for non-payment of the rent, and Schapiro made a special appearance. The trial court sustained Schapiro's challenge to jurisdiction, and this Court affirmed. In concluding the exercise of jurisdiction over Schapiro was proper, the Texas Supreme Court first determined Schapiro's activity in Texas was continuing and systematic. Second, the court considered the fact that Schapiro "became actively involved in a Texas business and voluntarily continued his commitment for almost two years" and determined Schapiro therefore purposely availed himself of the benefits of Texas. Finally, having determined Schapiro had minimum contacts with Texas, the court held the exercise of jurisdiction over Schapiro did not offend traditional notions of fair play and substantial justice because Schapiro's activity in Texas justified the conclusion that he should expect to be called into a Texas court. *Id.*

Cornerstone further relies on the Texas Supreme Court's opinion in *Spir Star AG v. Kimich* for its argument "that a nonresident who intentionally targets the Texas market and gains substantial profits from doing so cannot avoid personal jurisdiction merely by conducting its Texas business through a subsidiary." *See Spir Star*, 310 S.W.3d at 875. *Spir Star* is a products liability case in which Spir Star, a German corporation, established a Texas distributorship which used the trademarked "Spir Star" name and acted as Spir Star's exclusive distributor in Texas

and North America. *Id.* at 871. The court noted a seller's awareness "that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." *Id.* at 873 (citing *CSR Ltd.v. Link*, 925 S.W.2d 591, 595 (Tex. 1996) (quoting *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal.*, 480 U.S. 102, 112 (1987) (plurality op.))). Instead, citing *Asahi*, the court set out the additional requirement of some "additional conduct" – beyond merely placing the product in the stream of commerce – that indicates "an intent or purpose to serve the market in the forum State." *Id.* (citing *Asahi*, 480 U.S. at 112). Examples of this additional conduct include: (1) designing the product for the market in the forum State, (2) advertising in the forum State, (3) establishing channels for providing regular advice to customers in the forum State, and (4) marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. *Id.* (citing *Asahi*, 480 U.S. at 112). The court concluded Spir Star did not merely set its products afloat in a stream of commerce that happened to carry them to Texas but marketed its product through a distributor who has agreed to serve as its sales agent in Texas. *Id.* at 880 (citing *Asahi*, 480 U.S. at 112). Further, Spir Star's potential liability arose out of its contacts with Texas, and exercising personal jurisdiction over Spir Star did not offend traditional notions of fair play and substantial justice. *Id.*

We find neither *Schlobohm* nor *Spir Star* dispositive of this case. In *Schlobohm*, Schapiro took an active role in Hangers, investing nearly half a million dollars of his personal funds and repeatedly coming to Texas to take part in Hangers' business affairs. Among other things, Schapiro came to Dallas and obtained financing for Hangers' plant, signing a promissory note in his individual capacity for $136,702.10; personally guaranteed some of Hangers' leases in Texas; and demanded that all shares in the corporation be transferred to him. *Spir Star* was a products liability case in which a German manufacturer established a Texas distributorship

which used the trademarked "Spir Star" name and acted as Spir Star's exclusive distributor in Texas and North America. Moreover, Spir Star marketed its product through a distributor who agreed to serve as its sales agent in Texas.

In contrast, appellees' took no direct action in Texas and did not market any product in Texas. Instead, appellees invested in New Reliant through subsidiaries. The record in this case does not show that appellees control the internal business operations and affairs of the subsidiaries at issue or that the degree of control exercised by appellees is greater than that normally associated with common ownership and directorship. *See BMC Software*, 83 S.W.3d at 799; *Cappuccitti*, 222 S.W.3d at 481. Cornerstone has not established that appellees and the subsidiaries at issue are "not separate." *See BMC Software*, 83 S.W.3d at 799; *Cappuccitti*, 222 S.W.3d at 481. Under the facts and circumstances of this case, we cannot conclude the trial court erred in granting appellees' special appearances. We overrule Cornerstone's issues.

We affirm the trial court's orders.

/David L. Bridges/

111730F.P05      DAVID L. BRIDGES
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CORNERSTONE HEALTHCARE GROUP
HOLDING, INC, Appellant

No. 05-11-01730-CV     V.

RELIANT SPLITTER, L.P., NAUTIC
PARTNERS VI, L.P., AND KENNEDY
PLAZA PARTNERS VI, L.P., Appellees

On Appeal from the 68th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. 11-04339.
Opinion delivered by Justice Bridges.
Justices Lang and Lewis participating.

     In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

     It is **ORDERED** that appellee RELIANT SPLITTER, L.P., NAUTIC PARTNERS VI,
L.P., AND KENNEDY PLAZA PARTNERS VI, L.P. recover their costs of this appeal from
appellant CORNERSTONE HEALTHCARE GROUP HOLDING, INC.


Judgment entered June 5, 2014


/David L. Bridges/

DAVID L. BRIDGES
JUSTICE