**REVERSE, RENDER, and, DISMISS; and Opinion Filed June 18, 2014.**



In The

# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-13-00859-CV

**NAUTIC MANAGEMENT VI, L.P., Appellant**
**V.**
**CORNERSTONE HEALTHCARE GROUP HOLDING, INC., Appellee**

**On Appeal from the 68th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 11-04339**

## MEMORANDUM OPINION

Before Justices O'Neill, Lang-Miers, and Evans
Opinion by Justice Lang-Miers

This is an interlocutory appeal from the trial court's order denying the special appearance of Nautic Management VI, L.P. (NMVI), a Delaware limited partnership with its principal place of business in Providence, Rhode Island. For the following reasons, we reverse the trial court's order and render judgment granting the special appearance and dismissing Cornerstone Healthcare Group Holding, Inc.'s claims against NMVI for want of jurisdiction. We issue this memorandum opinion because the issues are settled. TEX. R. APP. P. 47.2(a), .4.

### BACKGROUND

We take the following facts from the parties' briefs. Cornerstone is headquartered in Dallas and owns and operates over a dozen hospitals in several states; it was looking to expand its business. NMVI is the general partner of two private equity funds and the manager of a third (the Funds). NMVI does not have employees or tangible resources; it performs its functions

through three committees—investment, executive, and limited partnership—and outsources its functions as necessary. The Funds are limited partnerships formed under Delaware law with their principal places of business in Rhode Island.

In 2010, the CEO and other employees of Cornerstone identified as an opportunity for acquisition a chain of eight Texas hospitals operating under the Reliant name. Instead of presenting the opportunity to Cornerstone, however, they presented it to Nautic Partners, LLC. Nautic Partners is a private equity firm that services private equity funds, chief among them the Funds. Scott Hilinski is a managing director of Nautic Partners and NMVI.

NMVI outsources to Nautic Partners services such as identifying potential investments, performing due diligence activities on those investments, negotiating potential investments, and managing the companies ultimately acquired.

After performing due diligence on the Reliant hospital opportunity, Hilinski presented the investment opportunity to NMVI's investment committee. The committee authorized the Funds to make the investments. The Funds then created Reliant Holding Company, LLC, which had two newly created subsidiaries, Reliant Pledgor, LLC and Reliant Opco Holding Corp., which in turn together owned 100% of Reliant Hospital Partners, LLC. Reliant Hospital Partners is the entity that actually acquired and now operates the Reliant hospital chain. Soon thereafter, the executives at Cornerstone involved in the Reliant transaction left Cornerstone to run the new Reliant hospital chain.

Cornerstone sued its former executives, Reliant Hospital Partners, Nautic Partners, Hilinski, NMVI, the Funds, and others alleging, among other things, breach of fiduciary duty and usurpation of corporate opportunity. NMVI and the Funds filed special appearances. The trial court granted the special appearances of the Funds, and Cornerstone appealed. We recently affirmed the order granting the Funds' special appearances. *Cornerstone Healthcare Group*

*Holding, Inc. v. Reliant Splitter, L.P.*, No. 05-11-01730-CV, 2014 WL 2538881 (Tex. App.—Dallas June 5, 2014, no pet. h.) (mem. op.).

Cornerstone did not contend that the trial court had general jurisdiction over NMVI. As the basis for specific jurisdiction over NMVI, Cornerstone alleged that NMVI purposefully availed itself of the privilege of doing business in Texas and committed torts in Texas. The petition described how the Funds, "through [t]heir general partner [NMVI]," traveled to Texas to meet with the former executives about the Reliant acquisition, how NMVI "purposefully invested and acquired a business that is based in Texas," and that NMVI is "actively involved in the management of Reliant, a Texas-based business with extensive operations throughout the state."

NMVI argued in its special appearance that Cornerstone's "jurisdictional allegations . . . are identical to [those] alleged with respect to the [Funds]" whose special appearances were granted. NMVI asserted and offered evidence to support that it had no contacts with Texas. It also asserted and offered evidence that it has no ownership interest in Reliant Hospital Partners, Reliant Opco, Reliant Pledgor, or Reliant Holding Co.

In response, Cornerstone alleged that NMVI's special appearance was different from the Funds' special appearances because:

> 1.      NMVI's fiduciary, Hilinski, traveled to Texas as part of the conspiracy to usurp the Reliant opportunity from Cornerstone, and to aid and abet the Executives' breaches of their fiduciary duties to Cornerstone [footnote omitted];
>
> 2.      NMVI's delegate, Nautic Partners, LLC conducted extensive due diligence in Texas in order to evaluate the Reliant opportunity and report its findings to NMVI; and
>
> 3.      NMVI was the decision-maker and authorized the Funds' investment that ultimately acquired the assets of Reliant Hospital Partners, LLC, including all its Texas assets.

After the hearing on NMVI's special appearance, the court coordinator sent an email to the parties stating that the trial court "has granted [NMVI]'s Special Appearance and has asked that you email me an order for him to sign." Ultimately, however, the trial court signed an order denying NMVI's special appearance, and this interlocutory appeal followed.

On appeal, NMVI argues that the trial court did not have personal jurisdiction because (1) the evidence showed that Hilinski and others acted as officers of Nautic Partners when they investigated the Reliant opportunity, (2) the contacts of Nautic Partners during the due diligence process cannot be attributed to NMVI because Cornerstone did not prove Nautic Partners was an agent of NMVI, and (3) NMVI's involvement in the Reliant transaction was limited and occurred in Rhode Island, and ownership of a Texas subsidiary is insufficient to support personal jurisdiction in this case.

Cornerstone argues on appeal that NMVI's role in the Reliant transaction was not limited and that, but for NMVI's approval, the sale would never have occurred. It argues that NMVI received a substantial fee "for finding, investigating, and planning the acquisition." Cornerstone also argues that NMVI controlled the money, authorized the deal, issued capital calls, had exclusive and complete control of the Funds, created the wholly owned subsidiaries by signing the Reliant acquisition documents on behalf of the Funds, and automatically controlled the board of every Reliant entity through its relationship to the Funds which "hold or indirectly control 100% of the stock of all Reliant entities today." Cornerstone argues that there was "plenty of evidence" that Hilinski's contacts were on behalf of NMVI, not just Nautic Partners, and that NMVI's transaction fee "could only be for the due-diligence activities." In its brief, Cornerstone stated, "The issue here is not one of imputing acts to NMVI, but whether NMVI's *own acts* establish minimum contacts." And in oral argument, Cornerstone said it was not trying to "pierce any veils."

–4–

The procedure for establishing and contesting personal jurisdiction is well settled. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 793 (Tex. 2002); *Cornerstone*, 2014 WL 2538881, at *2–3; *Anchia v. DaimlerChrysler AG*, 230 S.W.3d 493, 497–99 (Tex. App.—Dallas 2007, pet. denied). The only issue in this case is whether the trial court had specific jurisdiction over NMVI. Specific jurisdiction exists if the defendant "made minimum contacts with Texas by purposefully availing itself of the privilege of conducting activities here and its liability [arose] from or [was] related to those contacts." *DaimlerChrysler AG*, 230 S.W.3d at 498 (citations omitted). In making that determination, we examine the record for evidence of the defendant's contacts with the forum and their relationship to the litigation. *Id.* (citations omitted).

Whether a trial court has personal jurisdiction over a nonresident defendant is a question of law which we review de novo. *BMC Software*, 83 S.W.3d at 794. When the record does not contain findings of fact and conclusions of law, we must imply all findings of fact necessary to support the trial court's implied findings that are supported by the evidence. *Id.* at 795. However, when a reporter's record is included in the appellate record, the trial court's implied findings are not conclusive and are subject to challenge on legal and factual sufficiency grounds. *See id.*

DISCUSSION

In the appeal of the Funds' special appearance, Cornerstone alleged two bases for personal jurisdiction over the Funds: purposeful availment and substantial connection between the Funds' contacts and the operative facts of the litigation. *Cornerstone*, 2014 WL 2538881, at *2. Cornerstone argued below "that a nonresident who funds a Texas company, controls its board, and is actively involved in its affairs has established minimum contacts with the state."

*Id.* at \*4.  It argued that the Funds "paid for the hospitals at issue here, structured a chain of wholly owned subsidiaries to hold them, controlled the boards of each, and shortly after the purchase fired the executives who ran them."  *Id.*

In examining the Funds' contacts, or lack thereof, with Texas, we stated that "Cornerstone essentially argues the existence of the subsidiaries should be ignored, and [the Funds] should be required to appear in a Texas court because they 'control the funding and the board of New Reliant' and 'play a strategic and advisory role' to New Reliant."  *Id.*  But we concluded that the Funds "took no direct action in Texas and did not market any product in Texas."  We pointed out that the Funds "invested in New Reliant through subsidiaries" and that Cornerstone had "not established that [the Funds] and the subsidiaries at issue are 'not separate.'"  *Id.* at \*6.  We also concluded that "the record in this case does not show that [the Funds] control the internal business operations and affairs of the subsidiaries at issue or that the degree of control exercised by [the Funds] is greater than that normally associated with common ownership and directorship."  *Id.*

NMVI contends that Cornerstone makes the same jurisdictional arguments with respect to NMVI's contacts that it made about the Funds' contacts in *Cornerstone*.  *See id.* at \*4–6.  In oral argument, when asked to respond to the argument that NMVI's contacts with Texas were less than the Funds' contacts, Cornerstone stated that it "wouldn't go that far . . . I'd say they are the same.  I agree this and the other appeal have to be coordinated."

**Due-diligence activities.**  NMVI argues on appeal that Nautic Partners' and Hilinski's contacts with Texas cannot be imputed to NMVI.  It contends that it offered evidence showing that Hilinski's contacts with Texas regarding the Reliant hospital transaction were made on behalf of Nautic Partners, and all of NMVI's activities regarding the Reliant hospital transaction were after the due diligence had been conducted and were all done in Rhode Island.  Cornerstone

argues that the substantial fee NMVI received at the closing "could only be for due-diligence activities" because it "was expressly designated for services rendered *before* the Reliant closing." But the closing documents referred to this fee as a "transaction fee," and Cornerstone does not cite any evidence that this fee was for due-diligence activities conducted by NMVI. We conclude that Cornerstone did not present evidence that NMVI had any contacts with Texas regarding due-diligence activities.

**Nautic Partners as agent of NMVI**. NMVI also argues on appeal that Nautic Partners' contacts with Texas cannot be imputed to it because Nautic Partners was not its agent. It cites evidence showing that Nautic Partners "was free to accomplish the task NMVI delegated to it (identifying, analyzing, and negotiating potential transactions) in any manner [it] saw fit" and that it did not exercise control over how Nautic Partners performed its functions.

Cornerstone argues that this "claim is irrelevant to this appeal because the contacts at issue are by NMVI, not an independent contractor." Nevertheless, Cornerstone argues that "if a nonresident hires an independent contractor *specifically* to transact a deal in Texas, that counts as purposeful availment." It does not cite case authority to support its argument. But even if that were the law, a question we need not decide, Cornerstone does not cite evidence that NMVI hired Nautic Partners *specifically* to transact a deal in Texas. Instead, the evidence showed that former executives from Cornerstone initially approached Nautic Partners about the Reliant deal, Nautic Partners investigated the transaction, and Nautic Partners presented the deal to NMVI's investment committee as an opportunity for investment.

**NMVI's involvement in Reliant transaction.** NMVI also argues on appeal that its own involvement in the Reliant transaction is not sufficient to confer specific jurisdiction. It presented evidence that its investment committee's activities with respect to the Reliant transaction all occurred in Rhode Island and were limited to hearing a presentation about the

opportunity, considering the investment, authorizing the investment, and issuing capital call notices to fund the transaction.

Cornerstone does not contend that these activities were sufficient to confer personal jurisdiction on NMVI in Texas, but it makes several arguments that NMVI "controls the board members" and "remains the key player in the future of these Texas hospitals" through its control of the Funds. However, Cornerstone expressly stated it was not asserting jurisdiction under a piercing-the-veil theory, and we do not consider whether NMVI exercised such control over its direct and indirect subsidiaries such that they should be considered fused. *See BMC Software*, 83 S.W.3d at 798–99; *Knight Corp. v. Knight*, 367 S.W.3d 715, 730 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

We conclude that Cornerstone did not present evidence of *NMVI's* contacts with Texas related to the Reliant hospital acquisition and did not rebut NMVI's evidence that it did not have contacts with Texas related to the Reliant hospital acquisition. For the additional reasons articulated in *Cornerstone*, we conclude that the trial court did not have personal jurisdiction over NMVI. 2014 WL 2538881, at *4–6. Consequently, we conclude that the trial court erred by denying NMVI's special appearance.

CONCLUSION

We reverse the trial court's order denying NMVI's special appearance and render judgment dismissing Cornerstone's claims against NMVI for want of jurisdiction.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

130859F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

NAUTIC MANAGEMENT VI, L.P.,
Appellant

No. 05-13-00859-CV     V.

CORNERSTONE HEALTHCARE GROUP
HOLDING, INC., Appellee

On Appeal from the 68th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. 11-04339.
Opinion delivered by Justice Lang-Miers,
Justices O'Neill and Evans participating.

In accordance with this Court's opinion of this date, the June 3, 2013 order of the trial court denying Nautic Management VI, L.P.'s special appearance is **REVERSED** and judgment is **RENDERED** that:

Nautic Management VI, L.P.'s special appearance is **GRANTE**D and Cornerstone Healthcare Group Holding, Inc.'s claims against Nautic Management VI, L.P. are **DISMISSED** for want of jurisdiction.

It is **ORDERED** that appellant Nautic Management VI, L.P. recover its costs of this appeal from appellee Cornerstone Healthcare Group Holding, Inc.

Judgment entered this 18th day of June, 2014.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

–9–