ACCEPTED
01-14-00904-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
2/13/2015 12:04:26 PM
CHRISTOPHER PRINE
CLERK

**NO. 01-14-00904-CV**

---

**FIRST DISTRICT OF TEXAS AT HOUSTON**

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
2/13/2015 12:04:26 PM
CHRISTOPHER A. PRINE
Clerk

---

GRAMERCY ADVISORS LLC, GRAMERCY ASSET MANAGEMENT LLC, GRAMERCY LOCAL MARKETS RECOVERY FUND LLC, AND GRAMERCY FINANCIAL SERVICES LLC,

*Defendants-Appellants,*

v.

R.K. LOWRY, JR., ET AL.,

*Plaintiffs-Appellees.*

_____

**DEFENDANTS-APPELLANTS' AMENDED BRIEF**

_____

From the District Court of Harris County, Texas,
80th Judicial District; Trial Court Case No. 2008-74262

---

David C. Mattka (TSB No. 13231500)
MUNSCH HARDT KOPF & HARR, P.C.
401 Congress Avenue, Suite 3050
Austin, Texas 78701
(512) 391-6100 (telephone)
(512) 391-6149 (facsimile)
Email: dmattka@munsch.com

Sean F. O'Shea (*pro hac vice*)
Michael E. Petrella (*pro hac vice*)
Daniel M. Hibshoosh (*pro hac vice*)
O'SHEA PARTNERS LLP
521 Fifth Avenue, 25th Floor
New York, NY 10175
Tel: (212) 682-4426
Fax: (212) 682-4437
soshea@osheapartners.com
mpetrella@osheapartners.com
dhibshoosh@osheapartners.com

**ORAL ARGUMENT REQUESTED**

## <u>REQUEST FOR ORAL ARGUMENT</u>

Pursuant to Texas Rules of Appellate Procedure 38.1(e), 39.7, and 52.8(b)(4), Defendants-Appellants respectfully request oral argument because it will materially aid the Court in determination of an important question of law requiring careful consideration, particularly in light of the voluminous and complex factual record below.

## IDENTITIES OF PARTIES AND COUNSEL

**Defendants-Appellants**:

GRAMERCY ADVISORS LLC; GRAMERCY ASSET MANAGEMENT LLC; GRAMERCY LOCAL MARKETS RECOVERY FUND LLC; AND GRAMERCY FINANCIAL SERVICES LLC.

| | |
|---|---|
| David C. Mattka (TSB No. 13231500) | Sean F. O'Shea (*pro hac vice*) |
| MUNSCH HARDT KOPF & HARR, P.C. | Michael E. Petrella (*pro hac vice*) |
| 401 Congress Avenue, Suite 3050 | Daniel M. Hibshoosh (*pro hac vice*) |
| Austin, Texas 78701 | O'SHEA PARTNERS LLP |
| Tel: (512) 391-6100 | 521 Fifth Avenue, 25th Floor |
| Fax: (512) 391-6149 | New York, NY 10175 |
| | Tel: (212) 682-4426 |
| | Fax: (212) 682-4437 |

**Plaintiffs-Appellees:**

R. K. LOWRY, JR;  L-FALLING CREEK, LLC; RUSSELL A. CHABAUD; R-RAC WIMBLEDON LLC; JOHN P. MOFFITT; J-JASON LLC; RUSSELL A. CHABAUD, TRUSTEE OF THE RUSSELL G. CHABAUD 1999 INVESTMENT TRUST; R-RUSSELL WIMBLEDON, LLC; RUSSELL A. CHABAUD, TRUSTEE OF THE ASHLEY CHABAUD 1999 INVESTMENT TRUST; R-ASHLEY WIMBLEDON, LLC; RUSSELL A. CHABAUD, TRUSTEE OF THE AUDREY CHABAUD 1999 INVESTMENT TRUST; R-AUDREY WIMBLEDON, LLC; LMC RECOVERY FUND, LLC; UNION GAS FUNDING I, L.P.; RANA HOLDINGS, LLC; WESTY I LLC; AND MOGI, LLC.

W. Ralph Canada, Jr. (Lead Counsel)
David R. Deary, Wilson E. Wray and Tyler M. Simpson (Additional Counsel)
LOEWINSOHN FLEGLE DEARY, LLP
12377 MERIT DRIVE, SUITE 900
Dallas, Texas 75251
Tel: (214) 572-1700
Fax: (214) 572-1717

# TABLE OF CONTENTS

REQUEST FOR ORAL ARGUMENT ................................................................. ii

IDENTITIES OF PARTIES AND COUNSEL ....................................................... iii

TABLE OF AUTHORITIES ............................................................................ vi

RECORD REFERENCES ................................................................................ ix

STATEMENT OF THE CASE........................................................................... xi

ISSUE PRESENTED ..................................................................................... xii

STATEMENT OF FACTS .................................................................................1

    I.      APPELLEES AND BDO DEVISE THE TAX TRANSACTIONS ..... 1

    II.    GRAMERCY AGREES TO SOURCE EMERGING MARKET ASSETS FOR APPELLEES' TAX TRANSACTION, AND TO ARRANGE SEPARATE INVESTMENT FUND INVESTMENTS... 1

    III.   APPELLEES ACKNOWLEDGE THEY RECEIVED NO TAX ADVICE FROM GRAMERCY................................................ 4

    IV.   THE IRS DISALLOWS ANY BENEFIT FROM THE TAX TRANSACTION................................................................ 6

    V.    APPELLEES COMMENCE LITIGATION IN A FORUM TO WHICH GRAMERCY HAS VIRTUALLY NO CONNECTION........ 6

    VI.   GRAMERCY SEEKS DISMISSAL FOR LACK OF PERSONAL JURISDICTION ................................................ 9

    VII.  THE COURT BELOW REJECTS GRAMERCY'S AMENDED SPECIAL APPEARANCE ...........................................11

SUMMARY OF THE ARGUMENT .....................................................................11

ARGUMENTS AND AUTHORITIES ...................................................................13

    I.      GRAMERCY DOES NOT HAVE THE MINIMUM CONTACTS WITH TEXAS NECESSARY TO ESTABLISH SPECIFIC JURISDICTION. ...............................................................13

        A.   Gramercy's Attendance at Meetings in Texas Does Not Give Rise to Jurisdiction. ........................................... 14

           1.   The Pre-Investment Meeting. ............................. 15

           2.   The Post-Investment Meetings. ...........................20

B.  Gramercy's Contractual Performance Outside Texas Cannot Establish Personal Jurisdiction. .............................. 22

C.  Appellees' Performance Of Contractual Obligations In Texas Cannot Give Rise to Jurisdiction Over Gramercy. .......... 24

D.  Gramercy's Activities Concerning Appellees' Tax Strategy And Fund Investments Cannot Give Rise To Specific Jurisdiction. ........................................................ 25

  1.  Gramercy's Ministerial Execution of Transactions Necessary To Effectuate The Tax Transactions, And Its Management Of Entities Involved In The Tax Transactions, Do Not Give Rise To Specific Jurisdiction. ................................................. 25

  2.  Preparation Of Appellants' Tax Returns Is Irrelevant To Personal Jurisdiction Over Gramercy. ........................... 27

  3.  The Gramercy Defendants Earned No Fees From Appellees, And Their Earnings From Other Texas Residents Are Jurisdictionally Irrelevant. .............. 29

  4.  Gramercy's Transmission of Account Statements To Appellees Does Not Support A Finding of Specific Jurisdiction. ................................................. 30

  5.  Gramercy's Limited Communications with Appellees Do Not Give Rise to Jurisdiction. ........................................ 32

E.  Gramercy's Work on Behalf of Other Texas Clients is Irrelevant. ........................................................................ 34

II.  THE EXERCISE OF JURISDICTION OVER GRAMERCY WOULD BE INCONSISTENT WITH DUE PROCESS. ..................... 35

PRAYER ................................................................................................. 38

CERTIFICATE OF COMPLIANCE .................................................................. 39

CERTIFICATE OF SERVICE ......................................................................... 40

v

# TABLE OF AUTHORITIES

**Cases**          **Page(s)**

*Asshauer v. Farallon Capital Partners, L.P.*,
319 S.W.3d 1 (Tex. App. 2008)..................................................................20

*BMC Software Belgium, N.V. v. Marchand*,
83 S.W.3d 789 (Tex. 2002)........................................................................21

*Bozell Grp., Inc. v. Carpet Co-op of Am. Ass'n, Inc.*,
00 CIV. 1248 (RWS), 2000 WL 1523282 (S.D.N.Y. Oct. 11, 2000) .................18

*Bryan v. Gordon*,
384 S.W.3d 908 (Tex. App. 2012).............................................................25

*Cornerstone Healthcare Group Holding, Inc. v. Reliant Splitter, L.P.*,
2014 WL 2538881 (Tex. App. 2014) .........................................................29

*Farwah v. Prosperous Mar. Corp.*,
220 S.W.3d 585 (Tex. App. 2007)..............................................................17

*Financial Strategy Group, PLC v. R.K. Lowry, Jr. et al.*,
No. 01-14-00273 (Tex. App. 2015).............................................................11

*Grand Aerie Fraternal Order of Eagles v. Haygood*,
402 S.W.3d 766 (Tex. App. 2013)..............................................................34

*Guardian Royal Exch. Assurance Ltd. v. English China Clays, P.L.C.*,
815 S.W.2d 223 (Tex. 1991)............................................................. 35, 36

*Gustafson v. Provider HealthNet Servs., Inc.*,
118 S.W.3d 479 (Tex. App. 2003)..............................................................17

*Hotel Partners v. Craig*,
993 S.W.2d 116 (Tex. App. 1994)..............................................................19

*In re Stern*,
321 S.W.3d 828 (Tex. App. 2010)..............................................................20

*IRA Resources, Inc. v. Griego*,
   221 S.W.3d 592 (Tex. 2007)................................................ 22, 24, 28, 29

*Johnson v. Pounds*,
   2008 WL 3845450 (Tex. App. 2008) ...................................................28

*KC Smash 01, LLC v. Gerdes, Hendrichson, Ltd., L.L.P.*,
   384 S.W.3d 389 (Tex. App. 2012).................................................. 24, 33

*Lang v. Capital Res. Investments, I, LLC*,
   102 S.W.3d 861 (Tex. App. 2003).....................................................21

*Magnolia Gas Co. v. Knight Equip. & Mfg. Corp.*,
   994 S.W.2d 684 (Tex. App. 1998).....................................................21

*Marathon Oil v. A.G. Ruhrgas*,
   182 F.3d 291 (5th Cir. 1999) ......................................... 18, 24, 29, 30

*Markette v. X-Ray X-Press Corp.*,
   240 S.W.3d 464 (Tex. App. 2007)......................................... 22, 26, 28

*McElroy Machine & Mfg. Co., Inc. v. Flores*,
   2010 WL 466901 (Tex. App. 2010) ...................................................34

*Michiana Easy Livin' Country, Inc. v. Holten*,
   168 S.W.3d 777 (Tex. 2005)...........................................................14

*Moki Mac River Expeditions v. Drugg*,
   221 S.W.3d 569 (Tex. 2007)...................................................... passim

*Nat'l Indus. Sand Ass'n v. Gibson*,
   897 S.W.2d 769 (Tex. 1995)...........................................................20

*Olympia Capital Associates L.P. v. Jackson*,
   247 S.W.3d 399 (Tex. App. 2008)............................................... 31, 33

*Proskauer Rose LLP v. Pelican Trading, Inc.*,
   2009 WL 242993 (Tex. App. 2009) ............................................. 22, 33

vii

*Riverside Exports, Inc. v. B.R. Crane & Equip., LLC*,
   362 S.W.3d 649 (Tex. App. 2011).........................................................................31

*Thomas v. UBS AG,*
   706 F.3d 846 (7th Cir. 2013) ................................................................................6

*Turan v. Universal Plan Inv. Ltd.*,
   70 F. Supp. 2d 671 (E.D. La. 1999),
   *aff'd in rel. part sub nom.,* 248 F.3d 1139 (5th Cir. 2001) ...................................18

*Turan v. Universal Plan Inv. Ltd.*,
   No. 99-31379, 2001 WL 85902 (5th Cir. 2001)………………………… ..............21

*Walden v. Fiore*,
   134 S. Ct. 1115 (2014).........................................................................................24

## Statutes                                                                                                         Page

Tex. Rev. Civ. Stat. Ann. art. 1528n § 7.01............................................................7

## Rules                                                                                                            Page

Tex. R. App. P. 38.1(e) ............................................................................................ ii

Tex. R. App. P. 39.7................................................................................................. ii

Tex. R. App. P. 52.8(b)(4) ....................................................................................... ii

## Other Authorities                                                                                                Page

Larson, Erik, *Record $8 Billion Tax Fraud Gets Ex-Lawyer 15 Years,* Bloomberg
   Businessweek, June 25, 2014, http://www.businessweek.com/news/2014-06-
   25/ex-lawyer- sentenced-to-15-years-over-8-billion-tax-fraud.............................7

# RECORD REFERENCES

*Citations in this Appellant's Amended Brief to the parties are as follows:*

Appellants Gramercy Advisors LLC, Gramercy Asset Management LLC, Gramercy Local Markets Recovery Fund LLC, and Gramercy Financial Services LLC will be referred to collectively as "Gramercy."

Appellees R. K. Lowry, Jr.; L-Falling Creek, LLC; Russell A. Chabaud; R-RAC Wimbledon LLC; John P. Moffitt; J-Jason LLC; Russell A. Chabaud, Trustee of the Russell G. Chabaud 1999 Investment Trust; R-Russell Wimbledon, LLC; Russell A. Chabaud, Trustee of the Ashley Chabaud 1999 Investment Trust; R-Ashley Wimbledon, LLC; Russell A. Chabaud, Trustee of the Audrey Chabaud 1999 Investment Trust; R-Audrey Wimbledon, LLC; LMC Recovery Fund, LLC; Union Gas Funding I, L.P.; RanA Holdings, LLC, Westy I LLC, and MOGI, LLC will be referred to as "Appellees."

*Citations in this Appellant's Amended Brief to the record are as follows:*

CR – Clerk's Record (i.e. CR [page]; e.g. CR 1)

Supp. CR – Supplemental Clerk's Record (i.e. Supp. CR [page]; e.g. Supp. CR 1)

SSCR – Second Supplemental Clerk's Record (i.e. SSCR [page]; e.g. SSCR 1)[1]

RR – Reporter's Record (i.e. RR [page]; e.g. RR 1)

---

[1] In preparing the Second Supplemental Clerk's Record filed on February 12, 2014, the district court clerk appears to have unintentionally omitted record page numbers. Accordingly, citations to the Second Supplemental Clerk's Record are provided based on what the page references would have been, had they been included. In addition, the exhibits to the Affidavit of Robert Lanava dated September 19, 2014 appear to have been inadvertently omitted from the Second Supplemental Clerk's Record. Given that the Second Supplemental Clerk's Record was filed just one day before the deadline to file this Amended Brief, rather than seeking an additional extension of time to correct the district court clerk's filing, Gramercy has cited to identical copies of those exhibits included elsewhere in the Clerk's Record.

App. – Appendix (i.e. App. [tab]; e.g. App. 1)

## STATEMENT OF THE CASE

**Nature of the Case:** This appeal arises from the district court's Order denying Gramercy's Amended Special Appearance.

**Course of Proceedings:** Appellees filed an action against numerous defendants, including Gramercy, regarding an alleged scheme to defraud Appellees by inducing them to enter into certain tax shelter transactions. Gramercy filed a Special Appearance, and later an Amended Special Appearance, contesting the court's personal jurisdiction.

**Trial Court:** District Court of Harris County, Texas, 80th Judicial District, Judge Larry Weiman presiding; Case No. 2008-74262

**Trial Court's Disposition:** On May 30, 2014, Gramercy filed an Amended Special Appearance. On October 17, 2014, the district court entered an Order denying Gramercy's Amended Special Appearance.

## ISSUE PRESENTED

1.　　Did the district court err in denying Gramercy's Amended Special Appearance and exercising personal jurisdiction over Gramercy when Appellees conceded Gramercy was not subject to general jurisdiction, and when there was virtually no connection between Gramercy's Texas contacts and the misconduct forming the basis of Appellees' claims?

## I.   APPELLEES AND BDO DEVISE THE TAX TRANSACTIONS

Appellees are ultra-wealthy businessmen who enjoyed large capital gains in 2000.  CR 117 (Fifth Amended Petition ("FAP") ¶ 83).  Seeking to reduce their tax liability on their multimillion-dollar earnings, Appellees approached defendant below BDO USA, LLP (formerly known as BDO Seidman LLP) ("BDO").  CR 117 (FAP ¶ 84).  At a September 26, 2000 meeting in Texas that Gramercy did not attend, BDO suggested that Appellees execute a specific tax strategy it had designed.  CR 118-119 (FAP ¶ 86).  Two well-known law firms that allegedly did not attend the September 26, 2000 meeting, Sidley Austin, LLP ("Sidley Austin") and De Castro, West, Chodorow, Glickfeld & Nass, Inc. ("De Castro"), also advised Appellees that they would benefit from the BDO-designed strategy.  *See, e.g.*, CR 97-99 (FAP ¶¶ 43-44).  Based on BDO's representations at the September 26, 2000 meeting, Appellees decided to execute the tax transaction (the "Tax Transaction") designed by BDO.

## II.   GRAMERCY AGREES TO SOURCE EMERGING MARKET ASSETS FOR APPELLEES' TAX TRANSACTION, AND TO ARRANGE SEPARATE INVESTMENT FUND INVESTMENTS

Gramercy's role in the Tax Transaction was extremely limited and peripheral because it is not an accounting or tax advisory firm.  Gramercy is a Connecticut-based asset management firm with particular expertise in emerging markets.  SSCR  4 (Affidavit of Robert Lanava dated Sept. 18. 2014 ("Lanava

1

Aff.") ¶ 4). Gramercy's reputation was known to BDO, which contacted Gramercy and requested that it source emerging market and other assets for the Tax Transaction. SSCR 8 (Lanava Aff. ¶ 20). Gramercy agreed to do so, but only on the *explicit* condition that Appellees acknowledge Gramercy was not opining on, or making representations as to, the effectiveness or legitimacy of the Tax Transaction. CR 3646-3658 (Lanava Aff. Exs. 1-2).

Gramercy was introduced to Appellees at a November 2000 meeting in Texas attended by Appellees, a Gramercy representative, Jay Johnston, and certain BDO personnel. CR 3701-3702 (Affidavit of Jay Johnston dated July 18, 2014 ("Johnston Aff.") ¶ 6). Mr. Johnston discussed Gramercy's investment funds and provided a description of the types of assets Gramercy would source for Appellees. *Id.* Mr. Johnston did not discuss the tax aspects of the Tax Transaction or speculate as to how the IRS might view the transaction. *Id.* Subsequent to the November 2000 meeting, Appellees hired Gramercy to perform two separate tasks: (1) acquire certain assets as directed by BDO for use in the Tax Transaction, and (2) manage investments in some of Gramercy's investment funds (the "Fund Investments"). SSCR 8 (Lanava Aff. ¶ 21). This action arises from the IRS's ultimate decision to disallow Appellees any tax benefits from the Tax Transaction; the litigation has nothing to do with the Fund Investments. CR 95-96 (FAP ¶ 39).

After the November 2000 meeting, Gramercy performed separate and distinct tasks related to the two prongs of its engagement by Appellees:

- **Tax Transactions:** In connection with the Tax Transactions (which Appellees decided to engage in for the 2001-2005 tax years), Gramercy acquired assets with characteristics determined by BDO. SSCR 8 (Lanava Aff. ¶¶ 21-22). Gramercy acquired these assets from either its New York office (Gramercy was based in New York City from its inception through mid-2001) or its Connecticut office (Gramercy has been based in Connecticut since mid-2001). SSCR 9 (Lanava Aff. ¶¶ 25-26). Gramercy reported the results of these transactions to Appellees' independent accountants—BDO and Financial Strategy Group, PLC ("FSG")—who then prepared Appellees' tax returns.[2] SSCR 10-11 (Lanava Aff. ¶ 30). Gramercy did not execute any transactions related to the Tax Transactions from Texas and all of the Tax Transaction trades were processed through investment exchanges and banks located outside of Texas. SSCR 8 (Lanava Aff. ¶ 22).

- **Fund Investments:** In connection with the Fund Investments, Gramercy managed Appellees' investments; sent periodic account statements to

---

[2] BDO prepared Appellees' tax returns in its Chicago, Illinois headquarters. SSCR 7 (Lanava Aff. ¶ 18). FSG prepared Appellees' tax returns in its Memphis, Tennessee office. SSCR 10-11 (Lanava Aff. ¶ 30).

3

Appellees and/or their advisors; and had occasional telephone calls with Appellees and/or their advisors. SSCR 8, 9 (Lanava Aff. ¶¶ 21, 24). All of these activities, which are unrelated to the Tax Transactions underlying this lawsuit, were undertaken from Gramercy's offices in New York or Connecticut. SSCR 9 (Lanava Aff. ¶¶ 25-26). Gramercy personnel also attended a limited number of meetings in Texas with Appellees and/or their advisors at Appellees' request in order to update them on the performance of their Fund Investments or to discuss certain investment opportunities unrelated to the Tax Transaction. SSCR 9; CR 3703 (Lanava Aff. ¶ 24; Johnston Aff. ¶ 8).

## III. APPELLEES ACKNOWLEDGE THEY RECEIVED NO TAX ADVICE FROM GRAMERCY

Gramercy's performed its services for the Tax Transaction pursuant to an Investment Management Agreement ("IMA"). Each of the investing Appellees executed an IMA with Gramercy in it acknowledged in the plainest terms that Gramercy had not rendered any advice concerning the tax implications of the transactions in question:

> [Gramercy] is not required to inquire into or take into account the effect of any tax laws or the tax position of [Appellee] in connection with managing the Account. To the fullest extent permitted by law, *neither [Gramercy], its members or any of their respective affiliates and their respective partners, members, officers, directors, employees, shareholders and agents shall be liable in*

*any manner to [Appellee] with respect to the effect of any U.S. federal, state, local or any other taxes of any nature whatsoever on the Account of [Appellee] in connection with managing the Account or in connection with this Agreement or otherwise.* [Appellee] agrees that [it] has consulted [its] own tax advisor regarding the possible tax consequences of establishing the Account or entering into any investment made under or in connection with this Agreement.

SSCR 10-11, CR 3650-3651 (Lanava Aff. ¶¶ 30, 32 and Ex. 1, ¶ 7(c) (emphasis added)). Each of the IMAs has an integration clause and a New York choice-of-law provision. CR 3653-3654 (Lanava Aff. Ex. 1, ¶¶ 14(a), 14(d)).

Similarly, in side "Belief Letters," each investing Appellee explicitly represented to Gramercy that

it has consulted with its own financial, tax and legal advisors with respect to the Transactions *and, in particular, the effect of the tax laws and regulations and the impact of any notices or announcements issued by the IRS*, (b) it *has not relied on [Gramercy] for any financial, tax or legal advice with respect to the Transactions*, and (c) it *shall not have any claim against [Gramercy] in the event that any tax liability, problem or issue should arise in connection with the Transactions* other than as a direct result of any negligence of [Gramercy] in effecting the investments pursuant to the [IMA].

SSCR 10-11, CR 3657-3658 (Lanava Aff. ¶¶ 30, 33 and Ex. 2 (emphasis added)).

Additionally, each investing Appellee also executed an Interest Transfer Agreement containing both a New York choice-of-law provision and a forum

5

selection clause in which the parties agreed to the non-exclusive jurisdiction of courts located in New York City.  SSCR 12, CR 3670 (Lanava Aff. ¶ 34 and Ex. 3 § 9.5).

## IV.  THE IRS DISALLOWS ANY BENEFIT FROM THE TAX TRANSACTION

Appellees' tax returns for the 2001-05 tax years were prepared by BDO and/or FSG.  Gramercy had no role whatsoever in the preparation of those returns other than supplying limited factual information to the relevant accounting professional(s).  SSCR 10-11 (Lanava Aff ¶ 30).  After Appellees filed their tax returns for the 2001-05 tax years, the IRS audited them.  CR 184-185 (FAP ¶ 253).  Appellees claim the IRS has represented that they will be required to pay the taxes they attempted to avoid through use of the Tax Transaction, and will also be assessed penalties and interest.  CR 185 (FAP ¶ 254).

## V.  APPELLEES COMMENCE LITIGATION IN A FORUM TO WHICH GRAMERCY HAS VIRTUALLY NO CONNECTION

On December 18, 2008, Appellees initiated this lawsuit in Harris County, Texas, seeking to make Gramercy the unwilling insurer of their inherently risky Tax Transaction.[3]  Yet Gramercy has effectively no ties to Texas.  Each Gramercy

---

[3]   The frivolousness of claims such as those Appellees assert in this case was recently addressed by Judge Richard Posner of the United States Court of Appeals for the Seventh Circuit, who labeled similarly situated persons "tax cheats" whose sole aim was to avoid millions of dollars in federal income taxes. *Thomas v. UBS AG,* 706 F.3d 846, 850 (7th Cir. 2013).  Judge Posner referred to the lawsuit such plaintiffs brought against the bank that maintained certain accounts for them

6

Defendant is a limited liability company organized under the laws of the State of Delaware. SSCR 4, 5; CR 88-93 (Lanava Aff. ¶¶ 3, 4, 8; FAP ¶¶ 30-34). Prior to 2001, each Gramercy Defendant had its principal place of business in New York, New York. SSCR 4 (Lanava Aff. ¶ 3). Since 2001, each Gramercy Defendant has had its principal place of business in Greenwich, Connecticut. SSCR 4; CR 88-93 (Lanava Aff. ¶ 3; FAP ¶¶ 30-34). None of the Gramercy Defendants, nor any of their members, has ever resided in Texas. SSCR 4, 5; CR 3701 (Lanava Aff. ¶¶ 4, 8; Johnston Aff. ¶¶ 3-4).

Gramercy does not transact business in Texas; does not maintain licensing under the Texas foreign limited liability company laws to transact business here, *see* Tex. Rev. Civ. Stat. Ann. art. 1528n § 7.01; is not required to, and thus does not pay income or sales taxes in Texas; does not own or lease real or personal property in Texas; does not maintain offices, bank accounts, telephone listings, employees, or representatives in Texas; and does not advertise or affirmatively solicit business in Texas by means of "cold calling" or other similar sales tactics.

---

outside the United States as a "travesty" and expressed surprise the defendant had not asked for the imposition of sanctions. *Id.* at 854. Similarly, U.S. District Judge William Pauley recently referred to tax shelter litigants such as Appellees as "real estate tycoons, tire magnates and software developers" who refused to contribute to the country that "made their achievements possible," and further criticized "the incredible greed of [these] super wealthy" individuals. Larson, Erik, *Record $8 Billion Tax Fraud Gets Ex-Lawyer 15 Years,* Bloomberg Businessweek, June 25, 2014, http://www.businessweek.com/news/2014-06-25/ex-lawyer- sentenced-to-15-years-over-8-billion-tax-fraud.

SSCR 5-6; CR 3701 (Lanava Aff. ¶¶ 5-7, 9-12, 14; Johnston Aff. ¶¶ 4-5). Additionally, none of Gramercy's employees are professionally licensed in the State of Texas. *Id.*

Gramercy operates a passive website which is not specifically directed to persons in Texas. SSCR 6-7 (Lanava Aff. ¶¶ 14, 16-17). Gramercy's website merely provides information about Gramercy and general contact information for its offices, none of which are located in Texas. *Id.* Gramercy's website does not allow for the direct purchase of any goods or services through the website. *Id.*

Gramercy has had a small number of Texas-based clients, but they comprise a miniscule part of its business. From 2000 through 2008 (when Appellees filed their initial complaint), Gramercy Advisors and Gramercy Financial Services were the only Gramercy Appellants to have income derived from Texas clients. Gramercy Advisors earned $150,000 from Texas-based clients in 2002 (the only year it received income from Texas clients), representing ***seven-tenths of one percent*** (.70%) of Gramercy Advisors' income for that year. SSCR 7 (Lanava Aff. ¶ 18. Gramercy Financial Services earned $13,803 from Texas based clients in 2004 (the only year it received income from Texas clients), representing ***five-hundredths of one percent*** (.05%) of Gramercy Financial Services' income for that year. *Id.* Gramercy did not have substantive conversations with BDO

personnel in Texas concerning the Tax Transactions. SSCR 8-9 (Lanava Aff. ¶ 23).

## VI. GRAMERCY SEEKS DISMISSAL FOR LACK OF PERSONAL JURISDICTION

On May 6, 2009, Gramercy submitted a special appearance seeking dismissal of all claims against it for lack of personal jurisdiction. CR 9-30 (Special Appearance dated May 6, 2009). On November 11, 2011, Appellees filed a Fifth Amended Petition, which is the operative pleading for purposes of this appeal. CR 80-214 (FAP dated Nov. 11, 2011). Although the FAP consists of 133 pages and 334 paragraphs and was filed *after* Gramercy gave notice of its intent to challenge personal jurisdiction, it contains only the following boilerplate allegations as to why jurisdiction over Gramercy is proper in Harris County, Texas:

> This Court has personal jurisdiction over [Defendant] pursuant to the constitution and laws of the United States and the State of Texas. At all relevant times, [Defendant] has done and is doing business in the State of Texas, but does not maintain a regular place of business or current designated agent upon whom service may be made in this civil action. As described hereafter, [Defendant] has contracted with a corporation through its Texas office, and either party was to perform the contract in whole or in part in the State of Texas. Additionally, [Defendant] has committed torts, in whole or in part, in the State of Texas, including intentional tortious acts directed at a resident of the State of Texas where the brunt of the harm was felt. [Defendant's] conduct in the State of Texas has been committed by officers, directors, employees, and/or agents of [Defendant] acting within the scope of their employment or agency. [Defendant] has purposefully

9

availed itself of the benefits and protections of the laws of the State of Texas and could reasonably anticipate being subject to the jurisdiction of courts of the State of Texas. This suit against [Defendant] will not offend traditional notions of fair play and substantial justice and is consistent with due process of law. CR 88-89 (FAP ¶ 30).

On May 30, 2014, in response to the FAP, Gramercy filed an Amended Special Appearance, seeking dismissal of all claims against it for lack of personal jurisdiction. CR 243-271 (Amended Special Appearance dated May 30, 2014). On June 19, 2014, Appellees filed a Response to Gramercy's Amended Special Appearance, conceding that the court could not exercise general jurisdiction over Gramercy, but nonetheless claiming it could exercise specific jurisdiction. CR 387 (Response dated June 19, 2014 at 43). Appellees' Response sought to buffer the conclusory and bare-bones jurisdictional allegations in the FAP with a half dozen affidavits purporting to set forth jurisdictionally relevant facts.[4] In reality, however, Appellees' affidavits concerned jurisdictional contacts *other* Defendants, not Gramercy, had with Texas. *Id.* On July 22, 2014, Gramercy filed a Reply scrutinizing the evidence submitted by Appellees and noting that it was insufficient to give rise to personal jurisdiction. CR 3585-3632 (Reply).

---

[4] *See* CR 446-452: Affidavit of David R. Deary dated June 16, 2014 ("Deary Aff."); CR 425-435: Affidavit of Russell A. Chabaud dated Feb. 28, 2014 ("Chabaud Aff."); CR 1106-1117: Affidavit of R.K. Lowry, Jr. dated Feb. 17, 2014 ("Lowry Aff."); CR 1122-1131: Affidavit of John P. Moffitt dated Feb. 10, 2014 ("Moffitt Aff."); and CR 2084-2107: Affidavit of Newt Vannaman dated Feb. 18, 2014 ("Vannaman Aff.").

## VII. THE COURT BELOW REJECTS GRAMERCY'S AMENDED SPECIAL APPEARANCE

On October 17, 2014, the district court held oral argument on Gramercy's Amended Special Appearance. RR 4 (Tr. at 4). Following that hearing, the district court stated that it would exercise jurisdiction. RR 45 (Tr. at 45). The district court later issued a written summary order denying Gramercy's Amended Special Appearance. App. A (Order dated Oct. 17, 2014). The district court did not offer any explanation for its reasoning, nor any analysis of the record. On November 5, 2014, Gramercy filed a Request for Proposed Findings of Fact and Conclusions of Law. CR 3765-3769. To date, the district court has not acted on that request, and has never explained its reasons for denying Gramercy's Amended Special Appearance.[5]

## SUMMARY OF THE ARGUMENT

The record below affords no basis for Texas courts to exercise personal jurisdiction over Gramercy in this matter. Appellees have conceded that there is no general jurisdiction over Gramercy, and accordingly bear the burden of showing that their claims arise out of activities that Gramercy engaged in within Texas.

---

[5]    On January 27, 2015, this Court reversed the district court's denial of a special appearance by defendant FSG, finding its Texas contacts insufficient to support a finding of personal jurisdiction. *See Financial Strategy Group, PLC v. R.K. Lowry, Jr. et al.*, No. 01-14-00273 (Tex. App. Houston—Jan. 27, 2015) (unpublished), App. B.

11

Appellees failed to make such a showing in the district court, and indeed cannot do so.

Gramercy does not have the minimum contacts with Texas necessary to establish specific jurisdiction, and each and every argument that Appellees asserted to the contrary below is infirm. By Appellees' own account, Gramercy attended just a *single* meeting with them prior to their decision to engage in the Tax Transaction, and gave no tax advice at that meeting. Following the meeting, Appellees signed written, integrated agreements acknowledging and promising that Gramercy had given them no tax advice, and that they were not relying on Gramercy for any such advice. Moreover, although Gramercy attended several meetings with Appellees after the Tax Transaction, each involved Appellees' *Fund Investments*, which have nothing to do with this lawsuit, and in any case were held at Appellees' request. These facts preclude any finding that Gramercy duped Appellees into engaging in the Tax Transaction, and establish that the district court had no basis to exercise specific jurisdiction over Gramercy.

The Appellees note that Gramercy engaged in various activities and communications related to the performance of its contractual obligations. However, all that Appellees have established is that Gramercy communicated with and rendered contractual performance to Texas residents from outside of Texas. As a matter of law, that is insufficient to support specific

12

jurisdiction. Moreover, Appellees' own contractual performance and communications from Texas are irrelevant to whether Gramercy is subject to specific jurisdiction here. Further, Gramercy's transmission of information to Appellees in Texas concerning their fund investments (as distinct from their Tax Transaction investments) is unrelated to Appellees' claims, and therefore immaterial to specific jurisdiction. In addition, work Gramercy performed for, and fees it received from, Texas clients *other than Appellees* are wholly irrelevant to specific jurisdiction over Gramercy.

Finally, given the sparseness of Gramercy's contacts with Texas, subjecting it to personal jurisdiction would offend traditional notions of fair play and substantial justice. The district court lacks personal jurisdiction over Gramercy and erred in denying its Amended Special Appearance.

## ARGUMENTS AND AUTHORITIES

## I. GRAMERCY DOES NOT HAVE THE MINIMUM CONTACTS WITH TEXAS NECESSARY TO ESTABLISH SPECIFIC JURISDICTION.

To establish specific jurisdiction over Gramercy, Appellees must show that it purposefully availed itself of the privilege of conducting activities within Texas, and that their claims resulted from injuries that are alleged to arise from or relate to Gramercy's contacts with Texas. *Moki Mac River Expeditions v. Drugg* 221 S.W.3d 569, 575 (Tex. 2007). The nexus between the Texas contacts and the operative facts of the litigation must be "substantial," such that the defendant's

13

forum contacts "will be the focus of the trial." *Id.* Moreover, there are three elements to the purposeful availment inquiry: (1) only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or third person; (2) the contacts must be purposeful instead of merely fortuitous; and (3) through the contacts the defendant must be seeking some benefit, advantage, or profit. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005). "[A] nonresident may purposefully avoid a particular jurisdiction by structuring its transactions so as neither to profit from the forum's laws nor be subject to its jurisdiction." *Id.*

Appellees argued below that Gramercy had various types of contact with Texas that were sufficient to give rise to specific jurisdiction. Yet the district court made no specific finding of *any* connection between *any* of Gramercy's alleged Texas contacts and Appellees' claims in the FAP. Moreover, the record is devoid of evidence or allegations sufficient to establish such a connection.

### A. Gramercy's Attendance at Meetings in Texas Does Not Give Rise to Jurisdiction.

Appellees argued below that Gramercy's attendance at various meetings in Texas, at which the Tax Transaction was purportedly discussed, was sufficient to

give rise to jurisdiction. Close examination of Appellees' own accounts of the meetings, however, contradicts their position.[6]

### 1. The Pre-Investment Meeting.

Appellees argued below that one Gramercy representative, Jay Johnston, attended a *single* pre-investment meeting in Texas in November 2000 related to their Tax Transaction, thus giving rise to specific jurisdiction. Yet Appellees' own account of that meeting in the record below reveals that Mr. Johnston made no representations about the Tax Transaction.[7] Specifically, Appellees' affidavits show that *Paul Shanbrom of BDO* led the meeting and made every single tax-related representation:

- *"Shanbrom* also made specific recommendations about the amount of money [Appellees] should invest to maximize [their] tax savings." CR 2087; CR 428; CR 1109; CR 1124 (Vannaman Aff. ¶ 11; Chabaud Aff. ¶ 11; Lowry Aff. ¶ 11; Moffitt Aff. ¶ 10 (emphasis added)).

- *"Shanbrom* made it clear that the distressed debt transactions implemented by Gramercy were intended to take advantage of purportedly legal tax loopholes to offset [Appellees'] anticipated tax liability." CR 2087-2088; CR 428; CR 1109-1110 (Vannaman Aff. ¶ 12; Chabaud Aff. ¶ 12; Lowry Aff. ¶ 12 (emphasis added)).

---

[6] Any Gramercy personnel who attended meetings in Texas with Appellees or their representatives did so solely in their capacity as employees of Gramercy Advisors LLC. SSCR 9; CR 3704 (Lanava Aff. ¶ 24; Johnston Aff. ¶ 10). Accordingly, to the extent this Court finds such meetings relevant, that relevance is limited to the Court's ability to assert personal jurisdiction over Defendant-Appellant Gramercy Advisors LLC alone.

[7] Gramercy attended the meeting at the request of BDO and/or Appellees. CR 3703 (Johnton Aff. ¶ 8).

15

- "**Shanbrom** led the discussion about how the tax savings were derived . . . ." CR 2087; CR 428; CR 1109; CR 1124 (Vannaman Aff. ¶ 11; Chabaud Aff. ¶ 11; Lowry Aff. ¶ 11; Moffitt Aff. ¶ 10 (emphasis added)).

- "**Shanbrom** repeatedly told [Appellees] that the distressed debt transactions were legal." CR 2088; CR 428-429; CR 1110; CR 1125 (Vannaman Aff. ¶ 13; Chabaud Aff. ¶ 13; Lowry Aff. ¶ 13; Moffitt Aff. ¶ 12 (emphasis added)).

- *Shanbrom* said that if the IRS challenged the validity of the distressed debt strategy, [Appellees] would prevail." CR 2088; CR 428-429; CR 1110; CR 1125 (Vannaman Aff. ¶ 13; Chabaud Aff. ¶ 13; Lowry Aff. ¶ 13; Moffitt Aff. ¶ 12 (emphasis added)).

- "**Shanbrom** told [Appellees] that Sidley Austin, a reputable law firm, would issue 'independent' opinion letters confirming the propriety of the distressed debt strategy. Shanbrom touted R.J. Ruble, a partner at Sidley Austin, as the recognized expert on distressed debt strategies." CR 2088; CR 428-429; CR 1110; CR 1125 (Vannaman Aff. ¶ 13; Chabaud Aff. ¶ 13; Lowry Aff. ¶ 13; Moffitt Aff. ¶ 12 (emphasis added)).

- "According to **Shanbrom**, Ruble would draft the opinion letters that would overcome any IRS challenge and would provide absolute penalty protection." CR 2088; CR 428-429; CR 1110; CR 1125 (Vannaman Aff. ¶ 13; Chabaud Aff. ¶ 13; Lowry Aff. ¶ 13; Moffitt Aff. ¶ 12 (emphasis added)).

These unequivocal, considered statements by Appellees Lowry, Chabaud, and Moffitt, as well as their accountant Vannaman, establish that Shanbrom alone made any tax-related representations at the November 2000 meeting. Mr. Johnston is alleged merely to have "confirm[ed] the details" and "discussed how Gramercy made the distressed debt investment and the types of distressed debt assets

16

involved." CR 2087; CR 428; CR 1109; CR 1124 (Vannaman Aff. ¶ 11; Chabaud Aff. ¶ 11; Lowry Aff. ¶ 11; Moffitt Aff. ¶ 10). Appellees' affidavits even concede that Gramercy was only involved in discussions concerning the amount of taxes Appellees sought to avoid to ensure that "Gramercy had enough distressed debt assets to meet *BDO's recommendations and [Appellees'] needs.*" CR 2087; CR 428; CR 1109; CR 1124 (Vannaman Aff. ¶ 11; Chabaud Aff. ¶ 11; Lowry Aff. ¶ 11; Moffitt Aff. ¶ 10) (emphasis added); *see also* CR 3701-3702 (Johnston Aff. ¶ 6).

To give rise to specific jurisdiction, a defendant's contacts with the forum must be specifically actionable in themselves. The crux of the Fifth Amended Petition is that Gramercy sold Appellees faulty tax advice, yet they do not claim Mr. Johnston made *any* of the tax-related statements that form the basis for their claims at the November 2000 Texas meeting. Accordingly, any other statements Mr. Johnston *did* make at that meeting are irrelevant to specific jurisdiction.[8] *See, e.g.*, *Gustafson v. Provider HealthNet Servs., Inc.*, 118 S.W.3d 479, 484 (Tex. App.—Dallas 2003, no pet.) (several Texas meetings involving defendant's

---

[8] Even if Gramercy's statements at the pre-investment meeting played *some* role in Appellees' decision to pursue the Tax Transaction, those statements are not substantially related to Appellees' claims that they were sold an inherently faulty tax strategy, as Gramercy never made any representations regarding that strategy. *See Farwah v. Prosperous Mar. Corp.*, 220 S.W.3d 585, 597 (Tex. App.—Beaumont 2007, no pet.) (that plaintiff's claimed "injuries would not have occurred 'but for' [defendant's] presence in Texas" held insufficient to create substantial connection between wrongful conduct and forum contacts).

17

representative insufficient to give rise to specific jurisdiction where plaintiff did not allege representative "breached any duties to it or committed any torts during these meetings"); *Marathon Oil v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999) (no specific jurisdiction over non-resident defendant that attended three meetings in Texas relating to gas sales contract over which plaintiff sued where there was no evidence defendant made false statements at meetings); *Moki Mac*, 221 S.W.3d at 585 (in-state representations insufficient to give rise to specific jurisdiction unless actionable in themselves, even where generally related to the subject matter of the case); *Turan v. Universal Plan Inv. Ltd.*, 70 F. Supp. 2d 671, 674 (E.D. La. 1999) *aff'd in rel. part sub nom.* 248 F.3d 1139 (5th Cir. 2001) ("Travels to business meetings [in the forum], conversations on the telephone, and correspondences by mail are not sufficient to establish minimum contacts unless there is evidence that the plaintiffs' claims directly arise from those specific activities."); *Bozell Grp., Inc. v. Carpet Co-op of Am. Ass'n, Inc.*, 00 CIV. 1248 (RWS), 2000 WL 1523282, at *7 (S.D.N.Y. Oct. 11, 2000) (declining to exercise specific jurisdiction over defendant who attended meetings in forum with plaintiff; although meetings were related to plaintiff's claims, court deemed them "mere links in the chain of events leading to the claims for which relief is sought").[9]

---

[9] Moreover, because the conspiracy alleged by Appellees was, even according to them, formed **outside** of Texas and well before the November 2000 meeting, Mr. Johnston's single pre-investment trip to Texas cannot give rise to specific

18

Crucially, even if Mr. Johnston did make tax-related statements at the November 26, 2000 meeting with Appellees, that still would not be sufficient to establish specific jurisdiction, because Appellees repeatedly acknowledged in writing *after* that meeting that (i) Gramercy had *not* rendered any opinion or advice on the tax implications of the transactions effectuated for Appellees; and (ii) Appellees were relying on their tax and legal advisors—*not Gramercy*—concerning the tax aspects of their investments. CR 3650-3651; CR 3657-3658 (Lanava Aff. Ex. 1, ¶ 7(c); Lanava Aff. Ex. 2); *see also* Facts § III, *supra*. Those acknowledgements were contained in IMAs that included integration clauses. CR 3653 (Lanava Aff. Ex. 1, ¶ 14(a)). Those acknowledgements establish that no prior tax-related representations by Gramercy can give rise to their claims, and thus that they are insufficient to establish specific jurisdiction. *See, e.g.*, *Moki Mac*, 221 S.W.3d at 585 (representations insufficient to give rise to specific jurisdiction unless actionable in themselves, even where generally related to the subject matter of the case).

---

jurisdiction. *See Hotel Partners v. Craig*, 993 S.W.2d 116, 122 (Tex. App.— Dallas 1994, pet. denied) (no jurisdiction over defendant attorney who visited Texas for meetings with plaintiffs concerning resort manager with whom he allegedly conspired, where allegations demonstrated that purported conspiracy arose and was conducted outside Texas and not purposefully directed at Texas). The pre-investment meeting in Texas was not even decisive in forming the parties' relationship, because Appellees subsequently traveled to New York to meet with Gramercy before deciding to invest with it. SSCR 10 (Lanava Aff. ¶ 27).

19

To the extent Appellees seek to conflate BDO's actions and statements at the November 26, 2000 meeting (or at any other time) with Gramercy's on the grounds that they conspired together, those efforts are unavailing. Texas courts reject attempts to blur the jurisdictional contacts of separate defendants on the basis that they are engaged in a conspiracy. *See Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 773 (Tex. 1995) (rejecting conspiracy theory of jurisdiction); *In re Stern*, 321 S.W.3d 828, 841 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (personal jurisdiction inquiry limited to whether "the defendant itself purposefully established minimum contacts such as would satisfy due process"); *Asshauer v. Farallon Capital Partners, L.P.*, 319 S.W.3d 1, 17 (Tex. App.—Dallas 2008, no pet.) ("the supreme court has declined to recognize the assertion of personal jurisdiction over a nonresident defendant based solely on the effects or consequences of an alleged conspiracy [even] with a resident of the forum state") (citations omitted). Accordingly, the only question before this Court is whether Gramercy itself has sufficient contacts with Texas to be subject to jurisdiction, not whether any other Defendant below had such contacts, regardless of any alleged "conspiracy."

### 2. The Post-Investment Meetings.

Appellees also argued below that Gramercy attended several post-investment meetings in Texas, and that those were sufficient to give rise to specific

jurisdiction.  The meetings at issue, however, were held ***for the sole purpose of updating them on their separate Fund Investments with Gramercy***.  CR 3703 (Johnston Aff. ¶ 8).  The meetings thus have nothing to do with this case, and cannot form the basis for specific jurisdiction.  *See, e.g.*, *Turan v. Universal Plan Investments Ltd.*, No. 99-31379, 2001 WL 85902, at *2 (5th Cir. Jan. 24, 2001) ("Business meetings in the forum state and related communications … are *not* sufficient to establish the requisite 'minimum contacts' *unless* Appellants' claims arose from those activities"); *Lang v. Capital Res. Investments, I, LLC*, 102 S.W.3d 861, 866 (Tex. App.—Dallas 2003, no pet.) (meeting with defendant in Texas to discuss business plan did not confer specific jurisdiction where plaintiff's claims concerned defendant's mismanagement of company, not business plan or any statements made by defendant at meeting).

The meetings were also requested by Appellees, not Gramercy, and are insufficient to give rise to specific jurisdiction for that reason as well.  *Magnolia Gas Co. v. Knight Equip. & Mfg. Corp.*, 994 S.W.2d 684, 688, 691 (Tex. App.—San Antonio 1998) (defendants' travel to Texas for meetings they did not instigate insufficient to give rise to specific jurisdiction), *abrogated on other grounds*, *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789 (Tex. 2002).

21

**B.     Gramercy's Contractual Performance Outside Texas Cannot Establish Personal Jurisdiction.**

Appellees argued below that Gramercy is subject to personal jurisdiction because it entered into contracts with Texas residents.  As a matter of law, such contacts are irrelevant.  A non-resident's out-of-state contractual performance pursuant to a contract entered into with Texas residents does not subject the out-of-state defendant to personal jurisdiction.  *See IRA Resources, Inc. v. Griego*, 221 S.W.3d 592, 595 (Tex. 2007) (reversing denial of special appearance by California investment advisor who performed work for Texas residents from its California office); *Proskauer Rose LLP v. Pelican Trading, Inc.*, 14-08-00283-CV, 2009 WL 242993, at *5 (Tex. App.—Houston [14th Dist.] Feb. 3, 2009, no pet.) (New York law firm not subject to personal jurisdiction where law firm drafted opinion letter for Texas tax shelter client because preparation of letter was done in New York, not Texas); *Markette v. X-Ray X-Press Corp.*, 240 S.W.3d 464, 468 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (affirming special appearance of Indiana law firm where advisory work allegedly giving rise to lawsuit was performed in Indiana, not Texas, despite communication of results of work to plaintiffs in Texas).     Gramercy performed its contractual obligations outside of Texas, and

therefore its performance cannot form a basis for personal jurisdiction.[10] SSCR 9 (Lanava Aff. ¶¶ 25, 26).

Appellees' argument to the district court that Gramercy is subject to personal jurisdiction because the relevant contracts contemplated a long-term agreement between the parties is likewise without merit. Appellees executed new transactional documents with Gramercy for *each* tax year in which they pursued their BDO-designed tax strategy. *See, e.g.*, CR 2126-2132, CR 2136-2201, CR 2208-2299, CR 2300-2318, CR 2378-2682, CR 2841-2923, CR 3085-3204, CR 3209-3464; CR 1300-1590, CR 1601-1718 (Vannaman Aff. Exs. 3, 5-10, 14-19, 20-24, 42, 47, 54-59, 62-79; Affidavit of Todd Simmens dated May 22, 2014 ("Simmens Aff."), Exs. 12-14, 18-20).[11] That fact utterly belies their argument

---

[10] Moreover, Gramercy executed the contracts at issue in New York or Connecticut. SSCR 11-12 (Lanava Aff. ¶¶ 32, 34-35). And all transactions executed by Gramercy concerning the Tax Transaction were executed from New York or Connecticut and processed through exchanges in New York or overseas. SSCR 8-9 (Lanava Aff. ¶¶ 22, 26). Gramercy did not execute a single trade or transaction with regard to the Tax Transaction from Texas or that was processed or cleared through Texas. *Id.*

[11] The Harris County District Clerk mistakenly included the Affidavit of Todd Simmens dated June 13, 2014 in the Clerk's Record, rather than the Affidavit of Todd Simmens dated May 22, 2014. *See* CR 1136-1138. (The Affidavit dated June 13, 2014 is included twice in the Clerk's Record, at CR 1136-1138 and CR 2074-2076.) Nonetheless, the exhibits to the May 22, 2014 Simmens Affidavit are included in the Clerk's Record, and accordingly are cited herein.

that the parties intended to enter into a long-term agreement.[12]  In any event, even a long-term agreement is insufficient to give rise to specific jurisdiction where, as here, the defendant's forum contacts were not actionable in themselves.  *Marathon Oil v. A.G. Ruhrgas*, 182 F.3d at 295 (requiring specifically actionable misconduct to exercise specific jurisdiction); *Moki Mac*, 221 S.W.3d at 585 (same).

### C.    Appellees' Performance Of Contractual Obligations In Texas Cannot Give Rise to Jurisdiction Over Gramercy.

Appellees argued that their performance under their contracts with Gramercy—which amounted to wiring money from Texas to accounts in New York and elsewhere—is sufficient to give rise to specific jurisdiction.  That is incorrect; only *Gramercy's* contacts with Texas are relevant to a determination of whether it is subject to personal jurisdiction.  *See Walden v. Fiore*, 134 S. Ct. 1115, 1125-26 (2014) (contacts relevant to jurisdictional analysis are those between *defendant* and forum state, not those that may exist between plaintiff and forum state); *KC Smash 01, LLC v. Gerdes, Hendrichson, Ltd., L.L.P.*, 384 S.W.3d 389, 394 (Tex. App.—Dallas 2012, no pet.) (plaintiffs' performance in Texas cannot be considered factor in determining whether defendant subject to personal jurisdiction); *Griego*, 221 S.W.3d at 597 (accepting money from Texas resident to open financial account insufficient to confer jurisdiction).  That certain

---

[12]    Moreover, Gramercy executed the transactions Appellees requested to implement their tax strategy in a short period of time near the end of each calendar year.  SSCR 8 (Lanava Aff. ¶ 22).

agreements were signed by Appellees in Texas is also jurisdictionally irrelevant. *See Bryan v. Gordon*, 384 S.W.3d 908, 917 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("disposition of the jurisdictional question should not turn on" where a plaintiff signed a contract).

**D.   Gramercy's Activities Concerning Appellees' Tax Strategy And Fund Investments Cannot Give Rise To Specific Jurisdiction.**

*1.   Gramercy's Ministerial Execution of Transactions Necessary To Effectuate The Tax Transactions, And Its Management Of Entities Involved In The Tax Transactions, Do Not Give Rise To Specific Jurisdiction.*

Appellees argued below that Gramercy's execution of transactions pursuant to certain Subscription Agreements gives rise to jurisdiction. This argument is without merit. The Subscription Agreements, *see, e.g.*, CR 2208-2299 (Vannaman Exs. 14-19), facilitated the transfer of assets as part of Appellees' Tax Transaction. SSCR 12 (Lanava Aff. ¶ 35). Yet the agreements and related transactions had nothing to do with Texas. Pursuant to the agreements, assets were moved from one New York investment account to another New York investment account. CR 2221-2222, CR 2236-2237, CR 2251-2252, CR 2266-2267, CR 2281-2282, CR 2296-2297 (Vannaman Exs. 14-19 at Appendix A). The Subscription Agreements also arranged for funds to be wired through a bank account outside of Texas for the benefit of the New York investment accounts. CR 2221-2222, 2210-2211, CR 2236-2237, 2225-2226, CR 2251-2252, 2240-2241, CR 2266-2267, 2255-2256,

25

CR 2281-2282, 2270-2271, CR 2296-2297, 2285-2286 (Vannaman Exs. 14-19 at Appendix A, at 2-3). The Subscription Agreements were sent to Gramercy's New York City office, where Gramercy's performance pursuant to the agreements took place. CR 2221-2222, 2210, CR 2236-2237, 2225, CR 2251-2252, 2240, CR 2266-2267, 2255, CR 2281-2282, 2270, CR 2296-2297, 2285; SSCR 9, 12 (Vannaman Exs. 14-19 at Appendix A, at 2; Lanava Aff. ¶¶ 25, 35). The Subscription Agreements therefore fail to provide a basis for the exercise of jurisdiction over Gramercy in Texas. *See, e.g.*, *Markette*, 240 S.W.3d at 468 (out-of-state contractual performance insufficient to establish personal jurisdiction, despite communication of results of work to plaintiffs in Texas).

Appellees argued that Gramercy played a role in various limited liability companies that implemented the Tax Transaction, thus giving rise to specific jurisdiction. That argument is baseless. First, Appellees alleged that Gramercy played a role in managing four of the entities that implemented the Tax Transaction (LMC, MPICS, RDICTD, and SGASSI). Even taking that allegation as true, all four companies were formed in ***Delaware***, not Texas.[13] Similarly, Appellees argued that Gramercy held a 10% interest in several entities involved in

---

[13] *See* CR 1233; CR 1732; CR 1784; CR 1836 (Simmens Aff. Ex. 2 at BDO Lowry Court 0000399 (LMC a "Delaware limited liability company"); Simmens Aff. Ex. 22 at BDO Lowry Court 0004662 (MPICS a "Delaware limited liability company"); Simmens Aff. Ex. 24 at BDO Lowry Court 0004811 (SGASSI a "Delaware limited liability company"); Simmens Aff. Ex. 26 at BDO Lowry Court 0005002 (RDICTD a "Delaware limited liability company")).

the Tax Transaction (STKEE, DSAMP, and WAINKR). Yet those were **Delaware** limited liability companies.[14] Accordingly, Gramercy's involvement with these entities is irrelevant to the jurisdictional analysis.

> 2. *Preparation Of Appellants' Tax Returns Is Irrelevant To Personal Jurisdiction Over Gramercy.*

Appellees argued that Gramercy's purported role in preparing tax returns reflecting their tax strategy is sufficient to give rise to specific jurisdiction. In fact, the record evidence was undisputed that **BDO** prepared the tax returns reflecting Appellees tax strategy for 2000 and 2001, while **FSG** prepared them for 2002 through 2004).[15] Gramercy did not prepare the returns. SSCR 10-11 (Lanava Aff. ¶ 30). Gramercy's only role with regard to the preparation of Appellees' taxes was to transmit raw financial information to either BDO's New York office or to FSG's Memphis, Tennessee office. SSCR 10-11 (Lanava Aff. ¶ 30). The information provided by Gramercy reflected the results of Gramercy's ministerial execution of

---

[14]  *See* CR 3224; CR 3266; CR 3308 (Vannaman Aff. Ex. 68 at VANN0007253 (STKEE a "Delaware limited liability company); Vannaman Aff. Ex. 69 at VANN0007592 (DSAMP a "Delaware limited liability company); Vannaman Aff. Ex. 70 at VANN0007910 (WAINKR a "Delaware limited liability company)).

[15]  *See, e.g.*, CR 2326; CR 2689; CR 2787; CR 3005; CR 3466; CR 3488; CR 3510 (Vannaman Exs. 28 at VANN0003025 (2000 return prepared by BDO); 44 at VANN0003107 (2001 return prepared by BDO); 45 at VANN0003414 (2002 return prepared by FSG); 51 at VANN0003595 (2003 return prepared by FSG); 80 at GA0328286 (2004 tax return prepared by FSG); 81 at GA0328307 (2004 tax return prepared by FSG); and 82 at GA0328328 (2004 tax return prepared by FSG)).

transactions from either New York or Connecticut and with counterparties in New York. *Id.*

As a matter of law, Appellees' allegations are insufficient to give rise to specific jurisdiction. Any work performed by Gramercy (or indeed, BDO and FSG) on the tax returns was performed outside of Texas, thus rendering it irrelevant to the personal jurisdiction analysis. *See Markette*, 240 S.W.3d at 468 (affirming special appearance of Indiana law firm where advisory work allegedly giving rise to lawsuit was performed in Indiana, not Texas, despite communication of results of plaintiffs in Texas). Further, Appellees' claims arise from the ***content*** of the returns (for which BDO and FSG are responsible), not their delivery, *see* CR 96-97 (FAP ¶¶ 40-41), and Gramercy's transmission of any returns to Texas is accordingly irrelevant. *See Griego*, 221 S.W.3d at 598 (IRA administrator's acts of "accepting payment for opening [an] account, and sending [forum plaintiff] periodic account statements … are too inconsequential to support a claim that it purposefully directed its activities" at Texas); *Johnson v. Pounds*, 11-07-00073-CV, 2008 WL 3845450, at *5 (Tex. App.—Eastland, Aug. 14, 2008, pet. denied) (affirming special appearance where plaintiff failed to establish that causes of action arose from defendants' contacts with Texas). And as noted, Appellees specifically disclaimed reliance on any tax-related statements Gramercy could have

28

made, rendering them irrelevant to Appellees' claims against Gramercy, and to specific jurisdiction. *See* § I-A, *supra*.

3. *The Gramercy Defendants Earned No Fees From Appellees, And Their Earnings From Other Texas Residents Are Jurisdictionally Irrelevant.*

Appellees contended that Gramercy earned millions of dollars in fees from implementing the Tax Transaction, thus giving rise to personal jurisdiction. That argument is flat wrong. ***None*** of the Gramercy entities that are parties to this case received income from the Appellees.[16] SSCR 7 (Lanava Aff. ¶ 18). And even if they had, that would be insufficient to establish jurisdiction. *Griego*, 221 S.W.3d at 597 (accepting money from Texas resident to open financial account insufficient to confer jurisdiction over out-of-state defendant).

Further, with respect to Gramercy's earnings from Texas residents unconnected to this case, Plaintiffs have conceded the issue of general jurisdiction, so any such earnings are irrelevant.[17] *See generally Marathon Oil*, 182 F.3d at 295

---

[16] Appellees paid any fees relating to the Tax Transaction to Gramercy Financial Products LLC ("GFP"), ***not*** to any of the Gramercy Defendants. CR 2077-2083 (Simmens Aff. re: Payments Ex. 1). GFP is a separate entity from any of the Defendants and it is not a party to the lawsuit. SSCR 7 (Lanava Aff. ¶ 19). Any payments received by GFP are therefore immaterial in determining whether any of the Gramercy Defendants are subject to personal jurisdiction. *See Cornerstone Healthcare Group Holding, Inc. v. Reliant Splitter, L.P.*, 05-11-01730-CV, 2014 WL 2538881, at *3-4 (Tex. App—Dallas Jun. 5, 2014) (granting special appearance of corporate entity where entity in question did not have jurisdictionally relevant ties to Texas, despite ties of subsidiary).

[17] In any case, two of the Gramercy defendants (Gramercy Asset Management and Gramercy Local Markets Recovery Fund) received ***no*** income from ***any*** Texas

(requiring specifically actionable misconduct to exercise specific jurisdiction);

*Moki Mac*, 221 S.W.3d at 585 (same).

> 4. *Gramercy's Transmission of Account Statements To Appellees Does Not Support A Finding of Specific Jurisdiction.*

Appellees asserted that Gramercy's transmission of account statements into Texas supports a finding of specific jurisdiction. The account statements at issue, however, solely concerned Appellees' **Fund Investments**, not their Tax Transaction. *See, e.g.* CR 2105 (Vannaman Aff. ¶ 54 (stating that "these email 'flash' previews of investment returns **related to the non-tax reducing investments**") (emphasis added)). Because this information concerned Fund Investments wholly separate from the Tax Transaction that is the basis of Appellees' complaint, it is irrelevant to determining whether Gramercy is subject to specific jurisdiction. *See, e.g.*, *Moki Mac*, 221 S.W.3d at 569 (no specific jurisdiction where subject of meetings distinct from issues in litigation); *Marathon Oil*, 182 F.3d at 295 (same).

---

clients during the relevant time period. SSCR 7 (Lanava Aff. ¶ 18). The two Gramercy Defendants that did receive income from Texas clients—Gramercy Advisors and Gramercy Financial Services—received very small amounts and percentages of their income from any Texas clients (let alone Appellees). Gramercy Advisors earned $150,000 from Texas based clients in 2002 (the only year from 2000-2008 in which it received income from Texas clients), representing seven-tenths of one percent (.70%) of Gramercy Advisors' income for that year. *Id.* Gramercy Financial Services earned $13,803 in 2004 (the only year between 2000 and 2008 it received income from Texas clients), representing five-hundredths of one percent (.05%) of Gramercy Financial Services' income for that year.

Moreover, even if the account statements at issue were relevant to Appellees' claims (which they are not), mere communication with a Texas resident does not subject a nonresident defendant to jurisdiction. *Olympia Capital Associates L.P. v. Jackson*, 247 S.W.3d 399, 418 (Tex. App.—Dallas 2008, no pet.) (nonresident defendants' transmission of investment statements and other contract-related communications to Texas plaintiff "insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction").

Appellees also contended below that Gramercy's maintenance of a website containing certain Fund Investment account information is sufficient to give rise to specific jurisdiction. In fact, the website merely contained information identical to records Gramercy had already been providing to Appellees via mail and/or e-mail, viewable on a password-protected basis. SSCR 6-7 (Lanava Aff., ¶¶ 16-17). Appellees could take no action via the website. *Id.* These facts rendered the website "passive" in nature and irrelevant to the jurisdictional analysis. *Riverside Exports, Inc. v. B.R. Crane & Equip., LLC*, 362 S.W.3d 649, 655 (Tex. App.— Houston [14th Dist.] 2011, pet. denied) ("Absent evidence that a business intends to serve the Texas market, a website that is merely informational, presenting only 'passive advertising,' generally will not support the exercise of personal jurisdiction."); *Washington DC Party Shuttle, LLC v. IGuide Tours*, 406 S.W.3d

723, 737 (Tex. App.—Houston [14th Dist.] 2013), *review denied* (Aug. 22, 2014) (passive website is one "in which the foreign defendant has simply posted information on a website that can be viewed in other jurisdictions" and noting such websites do not support the exercise of personal jurisdiction.") (citation omitted).

### 5. *Gramercy's Limited Communications with Appellees Do Not Give Rise to Jurisdiction.*

Finally, Appellees contended before the district court that Gramercy is subject to jurisdiction because it communicated consistently with them and their representatives in Texas about various matters relating to the Tax Transactions. *See, e.g.*, CR 2090-2103 (Vannaman Aff. ¶¶ 20-21, 23-24, 26-29, 31-39, 41-47, 49-51). As a general matter, Appellees' jurisdictional arguments concerning Gramercy's purported role in preparing their tax returns, attendance at meetings in Texas, and performing under the parties' agreements are without merit for reasons addressed in §§ I-A, I-B, and I-D, *supra*. Beyond that, the communications Appellees allege are insufficient to confer jurisdiction because they are limited to the following:

- Gramercy sent two faxes to Texas, one concerning an interest purchase agreement and another transmitting a tax return extension. CR 2095, 2098-2099 (Vannaman Aff. ¶¶ 32, 39).

- Gramercy sent ten emails to Texas containing draft transaction documents and the routine management of various out-of-state companies. CR 2100, 2101, 2103 (Vannaman Aff. ¶¶ 43, 45, 50).

- Gramercy participated in two phone calls with Appellees' advisor concerning transactions implementing their tax strategy. CR 2095 (Vannaman Aff. ¶ 32).

In sum, Appellees point only to two faxes, ten emails, and two phone calls *in five years* to support their "consistent communications" argument, and even those limited communications concerned work performed by Gramercy (or others) outside of Texas.[18] Such communications do not give rise to jurisdiction. *See KC Smash*, 384 S.W.3d at 393 (nonresident defendant's "telephone and email communications and the sending of payments to [forum resident] do not "constitute a contact demonstrating purposeful availment"); *Olympia Capital Associates, L.P.* 247 S.W.3d at 418 ("[E]ngaging in communications related to the execution and performance of [a] contract [between nonresident defendant and forum resident] are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant."); *Proskauer*, 2009 WL 242993, at *4 (mailing documents to Texas

---

[18] Appellees also alleged vaguely that their accountant, Vannaman, received "hundreds of mailings from Gramercy." CR 2101 (Vannaman Aff. ¶ 46). To the extent such mailings have not been included in the record, this assertion is conclusory and meaningless. Beyond that, it is impossible to determine whether the subject matter of the purported communications relates in any way to Appellees' claims such that the district court can exercise specific jurisdiction over Gramercy. Indeed, by Vannaman's own admission, many of the purported mailings concerned *Appellees' Fund Investments* (which are concededly not at issue in this case).

client and email exchanges with Texas client insufficient to give rise to jurisdiction).

### E. Gramercy's Work on Behalf of Other Texas Clients is Irrelevant.

Appellees argued that Gramercy's involvement with other Texas clients confers jurisdiction, but that argument is unavailing. As noted above, Appellees do not allege that Gramercy is subject to general jurisdiction. *See* Facts § VI, *supra*. Accordingly, the only contacts between Gramercy and Texas potentially relevant to resolution of Gramercy's Special Appearance are those that relate to the instant lawsuit. *See Grand Aerie Fraternal Order of Eagles v. Haygood*, 402 S.W.3d 766, 774 (Tex. App.—Eastland 2013, no pet.) (holding defendant not subject to specific jurisdiction and stating that "[i]n a specific jurisdiction analysis, the relevant facts concern the relationship between the nonresident defendant and the forum that are connected to the lawsuit."); *McElroy Machine & Mfg. Co., Inc. v. Flores*, 13-08-00528-CV, 2010 WL 466901, at *4 (Tex. App.—Corpus Christi Feb. 11, 2010, no pet.) (specific jurisdiction lacking where defendants' contacts with the forum state not connected to operative facts of the litigation). The Fifth Amended Petition contains no allegations that Gramercy's work for Texas investors unrelated to Appellees somehow gave rise to Appellees' causes of action, and accordingly any such work is irrelevant.

## II.  THE EXERCISE OF JURISDICTION OVER GRAMERCY WOULD BE INCONSISTENT WITH DUE PROCESS.

Exercising personal jurisdiction over Gramercy would offend traditional notions of fair play and substantial justice and would be inconsistent with the constitutional requirements of due process.  The following five factors should be considered in evaluating whether the exercise of personal jurisdiction over Gramercy would comport with due process: (1) the burden on Gramercy; (2) the interest of Texas in adjudicating this dispute; (3) Appellees' interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering the fundamental social policies.  *See Guardian Royal Exch. Assurance Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex. 1991).

The *Guardian* factors point towards dismissal of this action against Gramercy.  Gramercy has no business presence in Texas and is headquartered in Connecticut.  SSCR 4-5 (Lanava Aff. ¶¶ 3, 7).  Forcing Gramercy to litigate in Texas would obviously burden it.  Gramercy's operations are and have been based in the Northeast where its employees reside and where all of its files are kept.  SSCR 5 (Lanava Aff. ¶ 6).  Moreover, while *some* Appellees reside in Texas, Gramercy could not have been expected to believe that work it performed in New

York or Connecticut would somehow subject it to personal jurisdiction in Texas. The first *Guardian* factor therefore weighs in favor of dismissal.

The third factor is virtually irrelevant because approximately half of the Appellees are Delaware entities. CR 83-84 (FAP at 4-5) (stating that Appellees L-Falling Creek LLC, R-RAC Wimbledon LLC, J-Jason LLC, R-Russell Wimbledon LLC, R-Ashley Wimbledon LLC, R-Audrey Wimbledon LLC, and LMC Recovery Fund LLC are Delaware entities). And *none* of Appellants are present in Texas.

The second and fourth factors also do not warrant the exercise of jurisdiction. As described above, Appellees' claims against Gramercy are focused on Gramercy's work in New York or Connecticut. Additionally, the contracts at issue have New York choice of law clauses. Accordingly, not only does New York have a greater interest than Texas in adjudicating this dispute as the location of the alleged wrongful conduct, but also New York courts are better situated to apply New York law. A New York forum would therefore better serve the interest of providing the most efficient resolution of the instant dispute.

As this is a commercial dispute between sophisticated parties, the fifth factor is not implicated. Thus, the first, second, and fourth factors weigh in favor of dismissal while the third and fifth factors are neutral, establishing that the exercise of personal jurisdiction over Gramercy would be inconsistent with due process. *See, e.g.*, *Kaufman et al. v. BDO Seidman L.L.P. et al.*, No. 12 L 13292, Illinois

36

Circuit Court, Cook County, Opinion dated Nov. 26, 2014 (unpublished), App. D at 7 (finding exercise of personal jurisdiction over Gramercy would offend traditional notions of fair play and substantial justice on facts similar to those present here); *Coe et al. v. BDO Seidman, L.L.P., et al.*, No. 12 L 13691, Illinois Circuit Court, Cook County, Opinion dated Nov. 26, 2014 (unpublished), App. C at 7 (same).

## PRAYER

For the foregoing reasons, Gramercy respectfully requests that the trial court's order denying Gramercy's Amended Special Appearance be reversed, and that this Court grant such other and further relief as it deems just and proper.

Dated: February 13, 2015

Respectfully submitted,
**MUNSCH HARDT KOPF & HARR, P.C.**

By:\_\_/s/ David C. Mattka_____
David C. Mattka (TSB No. 13231500)
MUNSCH HARDT KOPF & HARR, P.C.
401 Congress Avenue, Suite 3050
Austin, Texas 78701
(512) 391-6100 (telephone)
(512) 391-6149 (facsimile)
Email: dmattka@munsch.com

*Lead Counsel for Defendants-Appellants*

Additional Counsel:

Sean F. O'Shea (*pro hac vice*)
Michael E. Petrella (*pro hac vice*)
Daniel M. Hibshoosh (*pro hac vice*)
O'Shea Partners LLP
521 Fifth Avenue, 25th Floor
New York, New York 10175
(212) 682-4426 (telephone)
(212) 682-4437 (facsimile)
Email: soshea@osheapartners.com
Email: mpetrella@osheapartners.com
Email: dhibshoosh@osheapartners.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4, I certify that the foregoing brief of Defendants-Appellants was prepared using Microsoft Word and, according to the reckoning of that software program, contains 8,835 words.

Daniel M. Hibshoosh (*pro hac vice*)

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served upon the parties listed below via the court's electronic filing system on February 13, 2015:

**Via E-Filing & Electronic Mail:**
W. Ralph Canada, Jr.
David R. Deary
Wilson Wray
Tyler Simpson
Loewinsohn Flegle Deary, LLP
12377 Merit Drive, Suite 900
Dallas, TX 75271
*Attorney for Plaintiffs-Appellees*

David C. Mattka